# Staunton.

## Virginia Pocahontas Coal Co. v. Lambert.

### September 12, 1907.

1. Principal and Agent—*Ratification—Agent Acting for Himself.*— Where a stranger holds himself out as the agent of another and makes a contract or does an act for that other's use or benefit, the latter may ratify. But, although a stranger may falsely represent himself as the agent of another, yet if he makes a purchase in his own name, for his own benefit and pays his own money therefor, there can be no ratification. Nor can the supposed principal, as against the alleged agent, claim the benefit of the purchase unless it was made under such circumstances as creates an estoppel, or the supposed principal has been deprived of some legal right, or been otherwise injured.

2. Trusts and Trustees—*Constructive Trust—Misrepresentations—Conveyance to Cure Defect in Former Deed.*—One who falsely represents himself as the agent of another, and procures a conveyance of land in his own name, by causing his vendor to believe that the conveyance is made to cure defects in a former conveyance of the vendor to such other, is a mere trustee for the party really intended to be benefited by the grantor.

Appeal from a decree of the Circuit Court of Roanoke county. Decree for the defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*A. A. Phlegar,* for the appellant.

*Robertson, Hall & Woods,* for the appellee.

Buchanan, J., delivered the opinion of the court.

This suit was instituted by the appellant for the purpose of compelling the appellee to convey to it the interests which he had acquired in two parcels of land lying in McDowell county, in the state of West Virginia, one containing ninety-three and the other thirty-four acres, by a conveyance from Susan J. Beavers and John Cline and wife, upon the ground that appellee had obtained said conveyance by falsely representing himself as the agent of the appellant.

The record shows that Samuel Lambert died in the year 1851, seized of several parcels of land, and leaving seven children. In the partition of his real estate, the ninety-three and thirty-four acre parcels involved in this suit were allotted to the decedent's daughters, Susan J. Beavers and Martha J. Cline, and his son, Thomas A. Lambert. The latter conveyed his interest to Bartley Rose, from whom, by *mesne* conveyances, the same passed to the appellant. In the year 1869 the interest of John Cline in these lands, by virtue of his rights as the husband of Martha J. Cline, was sold in a creditor's suit to Peter Cline. Afterwards Cline and wife, as they testify, executed a deed for her interest in the land to Alexander Beavers and Bartley Rose, who had acquired the interest sold in the creditor's suit; but this deed was not recorded and has never been found. The interest of Alexander Beavers and Bartley Rose passed by *mesne* conveyances to and is now owned by the appellant. In the year 1867 Susan J. Beavers and her husband, Andrew J. Beavers, undertook to convey their interest in the lands to Alexander Beavers, but the acknowledgment of the wife being insufficient, as is claimed, her interest did not pass by the deed.

By deeds dated, respectively, February 3, 1902, and March 13, 1902, a tract of 1,969 acres, and by a deed dated October 1, of the same year, a tract of a little over 200 acres, were conveyed to the appellant. These parcels of land adjoined each other and embraced the 93 and the 34-acre parcels of land in-

volved in this suit; but it appears that the appellant did not know that they were so embraced until in March, 1903, and was not informed as to the sources of title to the 93 and 34-acre parcels until August of that year, as the appellant's agents, in examining the title to the 1,969 and the 208-acre parcels, seem to have overlooked the interest of Mr. Cline and the defect, or alleged defect, in the deed by which Mrs. Beavers attempted to convey her interest.

By deed dated September 29, 1902, Mrs. Cline and her husband and Mrs. Beavers conveyed to the appellee all their interest in the lands of Samuel Lambert, deceased, consisting of the 93 and the 34-acre parcels and another small tract of land, which latter is not embraced in this litigation. In May, 1903, the appellee gave the appellant a twenty-days' option to purchase these lands at the price of $200 per acre, and after the option had expired, the appellant sought, without success, to have the same extended. In August of that year, the general counsel of the appellant interviewed Mrs. Beavers and Cline and wife, who informed him of their interest in and dealings with the land, and the circumstances under which they had conveyed to the appellee.

The question involved in the first error assigned, is whether or not the conveyance made by Cline and wife and Mrs. Beavers was obtained under such circumstances as entitles the appellant to the benefit of the interests thus acquired by the appellee.

The appellant bases its contention that they were so acquired upon two grounds—First: That the appellee made the purchase as the avowed agent of the appellant; and, Second: That he became a trustee *ex maleficio* because of the misrepresentations made to his grantors.

As to the first ground: The evidence satisfactorily shows that the appellee, in obtaining the conveyance of their interests from Mrs. Beavers and Cline and wife, represented that he was the agent of the appellant. This statement was false, and the

purchase was made in the appellee's own name, for his own benefit, and the consideration was paid with his own money.

It is settled law that where a stranger holds himself out as the agent of another and makes a contract, or does an act, for that other's use, or for his benefit, the latter may ratify. But it is equally clear, we think, that, where the contract made, or the act done, was not in that other's name, and was not intended for his use or benefit, there can be no ratification. This would seem to be necessarily so from the meaning of the word "ratify."

"Ratification," says Bouvier in his Law Dictionary, "is an agreement to adopt an act performed by another for us."

"A ratification," says a recent text-book, "by a principal of the acts of an agent can only be effectual between the parties when the act was done by the agent on account of the principal, not on his own account or on account of a third person. Where one buys in his own name for himself, another cannot adopt the act as a principal." 1 Am. & Eng. Ency. L. (2nd ed.) 1188-9. It is said in a note to that work, where numerous authorities are cited, that the rule as stated in the text is that laid down in the Year Book, 7 Hen. IV., fol. 35, where it was held that if a bailiff take a heriot, claiming property in it himself, the subsequent assent of the lord would not amount to a ratification; but if he take it as bailiff of the lord, the subsequent assent amounts to a ratification of the bailiff's act.

In the case of *Forbes &c.* v. *Hagman, &c.,* 75 Va. 168, 178, Judge Burks, who delivered the opinion of the court, in discussing the question of ratification, after stating what had been done in that case (tort), says: "This was a virtual ratification and adoption of what had been done by the agent, on the principle *omnis ratihabitio retrotrahitur et mandato priori aequiparatur,* which applies as well to a tort, when done to the use or for the benefit of him who subsequently adopts it, as to a matter of contract. It was said by Lord Coke, that 'he that agreeth to a trespass after it is done is no trespasser, *unless* the trespass was done *to his use* or *for his benefit,* and then his

agreement subsequent amounteth to a commandment.' 4 Inst. 317. So that the test of liability in such a case is said to be the consideration whether the act was originally intended to be done *to the use* or *for the benefit* of the party who is afterwards said to have ratified it. Broom's Leg. Max. 873 (marg.)"

"Chief Justice Tindall," continues Judge Burks, "in *Wilson* v.*Tumman,* 5 Man. & Gr. (46 Eng. C. L. R.) 236, states the rule more fully thus: 'That an act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him, is the known and well-established rule of law.'"

In the case of *Garvey* v. *Jervis,* 46 N. Y. 310, 313, 7 Am. Rep. 335, Chief Judge Church, in discussing this question, said: "It is a familiar rule that the ratification of an unauthorized act of an agent is equal to an original authority (Dunlop's Paley's Agency, 171, note *a*). But in this case the essential element is wanting, that the act must be done *for another.* Here it was not so done. The most that can be claimed is, that the defendant said he was acting for the plaintiff, which was false. He paid his own money, and in fact acted for himself. He was a stranger to the plaintiff, and, of course, under no obligation to act for him, and, as we have seen, he deprived the plaintiff of nothing to which he was entitled. * * * No authority has been cited, and I think it is safe to say that none exists, in which any court has ever held that a false declaration of agency for another enables the latter, as against the alleged agent, to receive the benefit of an act actually performed for the latter, unless it was performed under such circumstances as to create an estoppel, or unless the assumed principal has been deprived of some legal right, or otherwise injured." See also *Phil. W. & B. R. R. Co.* v. *Cowell,* 28 Pa. 329, 70 Am. Dec. 128, 130.

It is clear, as it seems to us, under the authorities and upon principle, that the appellant is not entitled to the benefit of the

conveyance to the appellee upon the ground that it had the right to and did ratify the purchase of the land acquired by him.

This brings us to the consideration of the question whether the purchase was made under such circumstances as to constitute the appellee a trustee *ex maleficio* for the benefit of the appellant.

While the evidence is conflicting as to the representations made by the appellee in obtaining the conveyance from Mrs. Beavers and Cline and wife, it clearly appears from the whole testimony and from the circumstances surrounding the transaction, that he made the impression upon the grantors that he was not purchasing for himself, but for the coal company, which claimed to be the owner of the land and was in possession thereof, and that they were induced to make the conveyance because of their belief that in so conveying they were curing defects in former conveyances of the same land made by them. In other words, the record establishes the fact that the appellee secured the conveyance by causing his vendors to believe that it was made to cure defects in their former conveyances. Where a conveyance is procured under these circumstances, the grantee under settled equitable principles is held to be a mere trustee for the party really intended to be benefited by the grantor.

"In general," says Pomeroy on Eq. Jur., sec. 1053, "whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein. * * *"

Perry on Trusts, sec. 118, says, that "If a person, by his

promises, or by any fraudulent conduct, with a view to his own profit, prevents a deed or will from being made in favor of a third person, and the property intended for such third person afterwards comes to him who fraudulently prevented the execution of the will or deed, he will be held to be a trustee for the person defrauded to the extent of the interest intended for him."

In 15 Am. & Eng. Ency. L., (2nd ed.) p. 1188, it is said: "So also, if one, though not in fact the agent of another, pretends to act as his agent and thereby secures title in his own name to property in which such other has an interest, he cannot deny that he was acting as agent and claim the benefit of the purchase, but will hold the title so acquired in trust."

In the case of *Rollins* v. *Mitchell,* 52 Minn. 41, 38 Am. St. Rep. 519, it was held, Mitchell, J., delivering the opinion of the court, that one who obtains a conveyance of land from a former owner by fraudulently giving him to understand that it is for the purpose of supporting an earlier defective conveyance, and thus validating the title of one who claimed thereunder, is a trustee *ex maleficio* for the latter, and that, in such case, the rights of the *cestui que trust* do not depend upon the existence of a fiduciary relation in regard to the title between him and the fraudulent grantee, nor upon the fact that he has some legal claim to the land which he could have enforced against the original owner thereof.

In the case of *Harold* v. *Bacon,* 36 Mich. 1, it was held that a deed fraudulently obtained from one who had before conveyed to another by a deed not of record, by false representations that it was being procured by and for the protection of the party holding under such prior unrecorded deed, did not vest in the grantee any title as against the real party for whose benefit the grantor undertook and designed to make the grant; and that such fraudulent grantee was a mere trustee for the party really intended by the grantor to be benefited.

We are of opinion that the appellee holds the property or interests acquired from Mrs. Beavers and Cline and wife in

trust for the benefit of the appellant, and that the circuit court erred in not so decreeing.

The decree complained of must, therefore, be reversed, and the cause remanded to the circuit court for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*