FRED ROBERTSON et al., Appellants, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RAWLINS, Appellee.

No. 16,845.

SYLLABUS BY THE COURT.

1. TRUSTEE—Volunteer Agent—Grantee of Conveyance Procured by Misrepresentations—Beneficiary. One who procures an assignment of a school-land certificate and a quitclaim deed to be executed and delivered to himself, by inducing the grantor to believe that the instruments will be used to perfect the title of a third person claiming to be the owner of the land affected, becomes a trustee of whatever he acquired for the benefit of such third person.

2. ——— Same. In such case it is not material that the fraudulent grantee acted voluntarily and used his own money; that he bore no previous fiduciary relation to, and practiced no deceit upon, the claimant of the land; that the grantor was the only person deceived; that the grantor was not actively concerned in perfecting the claimant's title and had no specific design to accomplish that end; that the fraudulent grantee made no promise to use the instruments in perfecting the claimant's title; and that the claimant's title was in fact voidable.

3. ——— Same. It would be unconscionable to allow an evildoer of this kind to reap any advantage from his machinations, and to prevent such a result equity gives the transaction the beneficial effect which the party who acted in good faith understood it would have.

4. PETITION—*Issue Tendered Not Enlarged by Answer—After-acquired Title—Supplemental Petition.* A petition pleading a specific title as the foundation for relief is not enlarged by an amended answer which, besides pleading specific defenses, states in general terms that the plaintiff has no title; and in order to secure the benefit of a new title acquired subsequent to the institution of the suit the plaintiff should obtain leave to file a supplemental petition setting up such title.

Appeal from Rawlins district court. Opinion filed February 11, 1911. Modified.

*W. S. Morlan*, and *Fred Robertson*, for the appellants.

*J. P. Noble, T. F. Garver*, and *R. D. Garver*, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs, Fred Robertson and W. J. Ratcliff, brought a suit the purpose of which was to settle the title to the land in controversy and to obtain the relief which would follow from an adjudication that they were the owners of it. Originally the land was school land. A certificate of purchase was issued which passed by due assignment to Mrs. Georgia F. Banta, of Maryville, Mo., who thereby, the petition alleges, became the lawful owner and holder of it. In 1901 the land was sold for taxes. On the basis of the tax proceedings, which were invalid, a patent was obtained by H. H. Obert, who conveyed to the defendant, the board of county commissioners of Rawlins county. In 1905 W. J. Ratcliff went to Maryville, Mo., and procured an assignment of the certificate of sale and a quitclaim deed of the land from Mrs. Banta. Soon afterward Ratcliff assigned a half interest to Fred Robertson. The necessary tenders were made by the plaintiffs to perfect their rights, if they were entitled to use the certificate of purchase adversely to the county. The county claimed the assignment of the certificate of purchase was obtained from Mrs. Banta

under circumstances which made the county the bene-
ficiary of the transaction. The issue thus raised was
submitted to a jury, which returned a general verdict
for the county and the following special findings of
fact:

"Ques. Did W. J. Ratcliff, one of the plaintiffs, pro-
cure from Georgia F. Banta an assignment of the cer-
tificate for the land in question by pretending and
representing to her that she had forfeited and lost all
interest in the land, that it was then owned by Rawlins
county, and that he wanted the assignment from her
for the purpose of perfecting the county's title to the
land? Ans. Yes.

"Q. Did Georgia F. Banta give such assignment to
Ratcliff believing it would be used for the purpose of
being used to perfect the title of the county to this
land? A. Yes."

Judgment was rendered in favor of the county, and
the plaintiffs appeal.

It is claimed that these findings are not supported
by the evidence. The testimony of Mrs. Banta was
taken by deposition. The deposition appears in full in
the abstract. The court has read it, and her state-
ments alone are ample to sustain the findings. She
was corroborated by other witnesses. She was con-
tradicted by Ratcliff, who was examined in the pres-
ence of the jury. Evidently his testimony was not ac-
cepted, so far as it conflicted with hers.

In her deposition Mrs. Banta states that the transac-
tion relating to the assignment and quitclaim deed was
wholly with Ratcliff, that he did not mention coming to
her for anyone else, and that when she signed the pa-
pers she did not believe she was transferring anything
to the county. It is argued that these statements show
that Ratcliff did not pretend to represent the county,
that Mrs. Banta supposed he was acting in his own
right, that she dealt with him on that basis, that she
had no intention of selling anything to the county,
and consequently that the findings can not stand. In
other portions of her testimony, however, the witness

makes the matter plain beyond possibility of misin-
terpretation. The substance of such testimony fol-
lows:

Ratcliff told her he came to perfect the title to this
and to another tract of land covered by the school-land
certificate that he was a perfecter of titles, and had
the right to do so. He told her that the county owned
the land in controversy, having purchased it for a poor
farm, and that George W. Gaunt owned the other
tract. He explained to her that she had no interest in
the land, that her interest was all gone, that it had
gone for nonpayment of taxes, that the time had ex-
pired on the patent for anything to be done, and that
she had no ownership of the land. He said he thought
the county would be willing to give her fifty dollars
and that Gaunt would be willing to give her twenty-five
dollars, that she could get seventy-five dollars out of
it, which was all she could get, and that after she
signed the papers he presented it would make the title
clear. She thought that if the land had gone for taxes,
if her right to redeem had expired and she had no inter-
est in it, she would take the seventy-five dollars. She
thought he was straightening up the title in case the
parties should desire to sell the land, and she thought
the papers she signed were to perfect the title to the
two pieces of land and to let the abstract show that
she did so.

It was not necessary that the jury should be wise
respecting the ways of the world to understand this
testimony. Ratcliff testified that before he went to
Missouri he understood the title of the county and of
Gaunt to the land covered by the certificate of pur-
chase was not good because of a decision of this court
relating to school-land certificates. His conduct proves
that he hoped to obtain the land for himself by means
of the outstanding certificate and he went to Missouri
to secure the coveted document. If Mrs. Banta should
entertain the belief that the certificate carried with it

a right to the land she might regard it as a valuable thing and might want to keep it, or if she consented to sell it she might demand a fair price for it. Therefore he convinced her that she had no right or interest whatever to transfer. If, however, this were true, he could obtain nothing of value by the transfer, and Mrs. Banta might be suspicious enough to inquire why he was expending so much time and money to secure a lifeless document. Consequently he satisfied her that he was acting for the county and for Gaunt, who would pay small sums for the certificate simply to clear up their titles. With this understanding she signed and delivered the instruments he presented.

The law question arising upon the foregoing facts is whether the plaintiffs can now dispute with the county that Ratcliff acted for its benefit. Robertson makes no claim to any superiority of right over that of his assignor, Ratcliff. It dignifies the matter too much to suggest that there may be a question about it. According to the facts as they were finally established the institution of the suit was merely an attempt to use a court of justice as a tool to finish up an unconscionable job. The fact that Ratcliff came into court with unclean hands was sufficient to prevent him from recovering, but the law does not stop there. It takes the transaction to be just as it was represented, seizes the fruit in the hands of the volunteer agent and passes it over to the party who ostensibly was to be benefited. It is scarcely necessary to cite authorities in support of this rule. Its justification lies in its moral quality and not in the recognition it has received in textbooks and court decisions. However, the following are pertinent: 3 Pomeroy's Eq. Jur., 3d ed., § 1053; 15 A. & E. Encycl. of L., 1188; *Mulvany v. Dillon,* 1 B. & B. [Irish Ch.] 409; *Sweet v. Jacocks,* 6 Paige Ch. [N. Y.] 355, 359; *Rollins v. Mitchell,* 52 Minn. 41; *Gates v. Kelley,* 15 N. Dak. 639; *Johnson v. Knappe,* [S. Dak. 1909] 123 N. W. 857; *Va. Pocahon-*

*tas C. Co. v. Lambert,* 107 Va. 368; *Merrett v. Poulter,* 96 Mo. 237; *Satterthwaite v. Loomis & McLachlen,* 81. Tex. 64; *Dennis et al. v. McCagg et al.,* 32 Ill. 429..

The plaintiffs argue that Ratcliff bore no fiduciary relation to the county, broke no faith with it, made no misrepresentations to it, and consequently that they are under no obligation to the county. It was not necessary that Ratcliff should already be bound to the county by any ties of good faith, should owe it any duty or should mislead it, in order that the plaintiffs may be charged as its trustees. Ratcliff having covered himself with the county's cloak, and in that garb having possessed himself of valuable rights respecting the property the county claimed, the law will not permit him to escape the fiduciary character of the relationship to the county which he assumed to bear. It makes no difference that he intervened voluntarily and used his own money. His mouth is closed against a denial of the capacity in which he acted, and the county has the right, if it so desires, to treat the transaction as one conducted solely for its benefit.

The plaintiffs further argue that, admitting the facts. to be as the findings show, Ratcliff deceived Mrs.. Banta in regard to the purpose for which he desired an assignment of the certificate and that she is the only person who should be heard to complain. The reply to this argument has already been stated. The plaintiffs are estopped from asserting that Ratcliff was not acting for the county in an endeavor to perfect its title to the land. The transaction is thereby purged of deceit and the instruments executed by Mrs. Banta are devoted to the very purpose and are given the precise effect which she had in mind. Nor does it make any difference in this action what Mrs. Banta's rights may be on account of the representations made to her respecting the extent of her interest in the land. The right of the county to recover against Ratcliff and his assignee does not depend upon those representations..

It rests upon the fiduciary relation which Ratcliff established between himself and the county; and, the transaction having been concluded, he holds the proceeds for the county and can not escape an accounting by asserting the impropriety of his own conduct in obtaining them.

The plaintiffs undertake to distinguish some of the cases cited. In the case of *Rollins v. Mitchell,* 52 Minn. 41, Mrs. Gabiou had conveyed to Bardon by a deed which was ineffectual. Mitchell held the Bardon title. Nichols procured from Mrs. Gabiou a deed to Rollins, a figurehead for himself, by representing that he was curing the Bardon title. Rollins was held to be a trustee *ex maleficio* for Mitchell. The court said:

"In our judgment, the entire evidence irresistibly compels the conclusion that Nichols secured the deed by giving Mrs. Gabiou to understand, or by conveying to her the impression, that it was in support of her original conveyance to Bardon, and to validate the Bardon title, and that she executed it under that impression, and supposing it would have that effect.

"It is not necessary that Nichols should have expressly told her that he or the party for whom he was acting had purchased of Bardon, and that the deed was desired for the purpose of fixing up that title. It is enough to hold him chargeable as trustee if he by indirection gave her to understand, or by any means intentionally conveyed to her mind the impression, that such was the fact. A person may make a false representation or fraudulent promise by indirect as well as by direct statements, and even by keeping silence when he ought to speak. [Citing cases.] It is urged, however, that, although a fraud may have been committed on Mrs. Gabiou, none was committed on defendant Mitchell; that to charge Nichols, as trustee for Mitchell, either the former must have sustained some fiduciary relation to the latter in respect to the title, or the latter must have had some claim to the land in the hands of Mrs. Gabiou, which he could have enforced against her. We do not so understand the law. The rights of the third person in such cases depend, not upon the fact that he had some legal or equitable claim to the property before the constructive trust was

created, but upon the fact that he acquired such right by the trust, as being the party for whose benefit it was intended by the former owner." (p. 49.)

Seizing upon the concluding words of this quotation, the plaintiffs argue that in cases of this kind equity merely executes the intention of the grantor, and that, unless the grantor holds the specific design of benefiting the third person, no equity in his favor will arise. It is further pointed out that Mrs. Banta was moved by no desire on her part to clear up the county's title. She merely thought the county desired to perfect its title and she got what she could for signing the necessary papers. The argument ignores entirely the facts upon which the decision is based. The first paragraph of the quotation discloses a state of mind on the part of Mrs. Gabiou which is precisely the same as that imputed to Mrs. Banta. It is true that the doctrine under consideration originated in cases like those referred to in Perry on Trusts:

"Courts of equity will not only interfere in cases of fraud, to set aside acts done, but they will also, if acts have by fraud been prevented from being done, interfere and treat the case exactly as if the acts had been done; and this they will do by converting the party who has committed the fraud, and profited by it, into a trustee for the party in whose favor the act would otherwise have been done. If one by a promise to buy land at an auction sale for one having an equitable interest in it induces the latter and her friends not to bid against him, he will be held a trustee. . . . If a person by his promises, or by any fraudulent conduct, with a view to his own profit, prevents a deed or will from being made in favor of a third person, and the property intended for such third person afterward comes to him who fraudulently prevented the execution of the will or deed, he will be held to be a trustee for the person defrauded, to the extent of the interest intended for him. . . . And where a person fraudulently intercepts a gift intended for another, by promising to hand it over if it is left to him, equity will compel an execution of the promise, by converting such person into a trustee." (Vol. 1, 5th ed., § 181.)

But it would require a lesion in the conscience of courts of equity to restrain the application of the doctrine to cases of this kind. As the Rollins-Mitchell case shows, no specific undertaking on the part of the grantor and no express promise on the part of the fraudulent grantee are necessary. It would be odious to suffer the evildoer to reap any advantage from his machinations, and to prevent such a result the transaction is given the beneficial effect which the party who acted in good faith understood it would have.

Mr. Pomeroy states the principle in a way which fairly covers the subject:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein." (3 Pomeroy's Eq. Jur., 3d ed., § 1053.)

In the case of *Va. Pocahontas C. Co. v. Lambert,* 107 Va. 368, the opinion reads:

"While the evidence is conflicting as to the representations made by the appellee in obtaining the conveyance from Mrs. Beavers and Cline and wife, it clearly appears from the whole testimony and from the circumstances surrounding the transaction that he made the impression upon the grantors that he was not purchasing for himself, but for the coal company, which claimed to be the owner of the land and was in possession thereof, and that they were induced to make the conveyance because of their belief that in so conveying they were curing defects in former conveyances of the same land made by them. In other words, the record establishes the fact that the appellee secured the conveyance by causing his vendors to believe that:

it was made to cure defects in their former conveyances. Where a conveyance is procured under these circumstances the grantee, under settled equitable principles, is held to be a mere trustee for the party really intended to be benefited by the grantor." (p. 373.)

The plaintiffs argue that a trust was imposed in that case to satisfy the moral obligation of the grantors to remedy defects in their former conveyance. It is sufficient to say that the court took no such position. The principles upon which the decision rests are those stated by Pomeroy and by the Minnesota decision, both of which are cited as authority.

In this case Ratcliff led Mrs. Banta to believe that the instruments he presented would be used to perfect the title to the two pieces of land. Acting under this belief, she signed them and delivered them to him. It would be utterly unconscionable to allow him to use documents procured by such means to overthrow the title. Therefore equity will take them away from him and will give them the beneficial effect which he represented they would have by delivering them to the title holder.

It is not necessary to discuss the authorities further. Entire unanimity is rarely to be found. The court is satisfied with the views which have been announced.

The answer alleged that Mrs. Banta was not the owner of the certificate of purchase in May, 1905, when the assignment and quitclaim deed were executed. Evidence was introduced relating to this defense, and the jury were instructed concerning it. The plaintiffs claim that the defense was irrelevant, that it was not established, and that the instructions upon the subject were erroneous. Conceding the claim to be well founded, it follows that Mrs. Banta was the owner of the certificate, as the plaintiffs alleged and as their proof showed, and the result already stated follows. If the defense were pertinent and duly established, the sole

foundation for relief presented by the plaintiffs' plead-ings was destroyed.

The petition, which was filed in August, 1905, prayed relief upon the specific ground of ownership of the certificate of purchase derived from Mrs. Banta by means of the assignment and the quitclaim deed. The tenders pleaded by the plaintiffs were all made in virtue of that ownership, and a demand for rents and profits was based upon the same right. The evidence offered by the plaintiffs was confined strictly to the issue presented by the petition. The evidence offered in support of the answer was confined strictly to the defenses which have been stated, and, so far as the matter of title was concerned, to the rights of the parties as they existed in 1905 before the suit was commenced. On rebuttal the plaintiffs offered evidence of a new title to the certificate of purchase, acquired in 1907 from a Mrs. Creveling, who, the county had tried to show, held the certificate in May, 1905. On objection that the evidence was immaterial, and that it was something fixed up a couple of years after the suit was instituted, it was excluded. Perhaps it was discretionary with the court whether or not it would permit the plaintiffs thus to shift their position to new ground and introduce a new issue at that stage of the proceedings. If so, the discretion was not abused. The only way the plaintiffs could properly secure the advantage of the title acquired after the suit was commenced was by obtaining leave, upon notice and under terms as to costs, to file a supplemental petition. (Civ. Code, § 145.) This course was not pursued. The plaintiffs say the county enlarged the issues by a general statement in an amended answer filed in 1908 to the effect that the plaintiffs did not own the certificate or the land it described. An amended petition had also been filed, and this statement was made in answer to the specific claim of title which it presented. If anything were expanded it was the an-

swer, to include defenses other than those specifically·
pleaded; but the plaintiffs were given no license to
abandon the amended petition at the end of the case
and substitute a new, unpleaded, and theretofore undis--
closed, cause of action.

Instructions to the jury upon the issues determined
by the special findings of fact are of course no longer
of consequence.

By the judgment Ratcliff's voluntary agency is kept.
upon an honest basis and the county obtains the full
benefit of it.   His repudiation of the trust deprives him
of compensation for his services, but the county ought
to reimburse him for its proportion of his expenditures.
in obtaining the assignment and quitclaim deed from
Mrs. Banta.   The judgment of the district court is·
modified and the cause remanded for the purpose of·
adjusting this matter.   The costs in this court are taxed.
to the appellants.