## Wytheville.

SECURITY LOAN AND TRUST CO., INC., v. POWELL AND OTHERS.

June 8, 1916.

Absent, Cardwell, J.

1. PRINCIPAL AND AGENT—*Undisclosed Principal—Burden of Proof—Specific Performance—Ratification.*—In a suit by an undisclosed principal for specific performance of a contract for the sale of real estate, the burden is upon him to show the existence of the agency at the time the contract was entered into before he can invoke the doctrine of undisclosed agency. The mere adoption of a contract, not actually, nor purporting to have been made on his behalf is not sufficient to enable him to maintain the suit.

2. PRINCIPAL AND AGENT—*Undisclosed Principal—Ratification.*—Where a stranger holds himself out as the agent of another and makes a contract, or does an act, for that other's use, or for his benefit, the latter may ratify; but where the contract made or the act done, was not in that other's name, and was not intended for his use or benefit, there can be no ratification.

Appeal from a decree of the Circuit Court of Princess Anne county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Burroughs & Bro.* and *Wolcott, Wolcott, Lankford & Kear,* for the appellant.

*James G. Martin* and *Starke, Venable & Starke,* for the appellees.

Kelly, J., delivered the opinion of the court.

This is a suit to enforce the specific performance of an alleged contract for the sale of real estate, dated September 17, 1906, and in the words and figures following:

"Received of Abbott Morris & Co. $5.00 on account of the purchase of my farm known as the McCoy tract, containing 140 acres, more or less, situated in Princess Anne county, the purchase price being $1,500.00 on the following terms:

"$500.00 cash and the balance payable on or before five years from date, with interest at 6 *per cent. per annum.* I agree to pay W. T. Braithwaite and Abbott Morris & Co. $100.00 as commissions on account of the above sale, the settlement on account of the purchase price to be made as soon as the title has been examined and found satisfactory.

"J. B. POWELL."

The suit was brought in August, 1910, by the appellant, Security Loan and Trust Company, whose name, as will be observed, does not appear in the alleged contract. The bill charges that "on the 17th day of September, 1906, the defendant (Powell) agreed in writing to sell to the plaintiff a tract of land, etc." setting out in full the description of the land, price and terms as stated in the contract, and exhibiting a copy thereof as part of the bill. No allegation whatever is made in explanation of the plaintiff's interest in or connection with the contract, but it appears from the evidence that the plaintiff at some time agreed with Abbott Morris & Co. to buy the land, and it further appears from the arguments and briefs of counsel that the plaintiff claims to stand in the relation

of the undisclosed principal of Abbott Morris & Co., and as such entitled to step in and enforce the contract in its own name. The first time Powell seems to have heard of the plaintiff in connection with the matter was some months after the contract, when he was asked to sign a deed conveying to it the land in question.

The sole defense of the defendant Powell, so far as the pleadings show, is succinctly expressed in the statement in his answer, "that he did not, on the 17th day of September, 1906, agree in writing to sell the plaintiff a tract of land," as set forth in the bill; and it is clear from the answer, taken as a whole and in the light of his testimony, that under the foregoing denial he meant to assert, both that he did not sign the contract exhibited with the bill, and that he had made no contract of any sort with the plaintiff company which he . regards as a mere volunteer coming in subsequently and seeking by adoption and a so-called ratification to avail itself of the benefit of the alleged contract. In his testimony he admits that at the instance of Braithwaite he signed an agreement for Abbott Morris & Co. on much the same terms as the contract sued on, but denies emphatically that he signed the latter.

It may be added that there were certain other defenses not raised by the pleadings, but referred to in the . evidence, which seem to have been made at the hearing below, and which were likewise urged before us. These are not, in our view, material to the issue upon which the decision of the case must rest.

The decree of the circuit court from which this appeal was granted, so far as it need be recited here, was as follows: "The court being of opinion that the contract dated September 17, 1906, filed with the bill, was signed by J. B. Powell, doth so find. But the court being further of the opinion that there

is no evidence in the record that Abbott Morris & Co. in making said contract acted as agents of the plaintiff, doth declare that the plaintiff has no contract with J. B. Powell which can be enforced, and without deciding the other defense claimed by the defendant, Powell, doth order and decree that the bill of the plaintiff be dismissed."

The appellant assigns as error the action of the court in holding that there was no evidence to establish a contract between it and the appellee. To sustain this assignment, appellant invokes and relies exclusively upon the doctrine applicable to cases in which an agent acts for an undisclosed principal. The difficulty in applying this doctrine to the present case lies in the fact that the evidence fails to show that any relationship of principal and agent existed between Abbott Morris & Co. and the appellant at the time the contract was made. The burden of proof was upon the appellant to show this relationship at the date of the contract before it could successfully invoke the principle of undisclosed agency to enable it to maintain this suit. 2 Clark & Skyles on Agency, sec. 529; *Ruiz* v. *Norton,* 4 Cal. 355, 60 Am. Dec. 618; *Powell* v. *Wade,* 109 Ala. 95, 19 South. 500, 55 Am. St. Rep. 916.

It was insisted at the argument of this case that certain portions of the evidence tend to show that Abbott Morris & Co. were acting for appellant from the outset, but after a careful study of the record we are unable to assent to this view. Upon the contrary, the evidence as a whole seems to us to indicate that the appellant did not come into the matter until after the sale to Abbott Morris & Co. had been agreed upon; and we find nothing in the negotiations between the parties thereafter which raises any contractual relations between the appellant and the appellee unless

the subsequent voluntary and naked adoption of the contract by the appellant can, without the consent of the appellee, be given that effect. That such adoption, or so-called ratification, does have this effect is the main contention of the appellant, and becomes, at last, the controlling question upon this appeal.

The theory advanced in support of this contention appears to be that it was not necessary for the relationship of principal and agent to have existed between Abbott Morris & Co. and appellant at the time of the contract, because the latter has subsequently ratified the contract, and, as claimed, has thereby obtained the right to enforce the same. Thus the petition for appeal says: "What evidence did the court have that the contract was that of the undisclosed principal? The best evidence—the institution of this suit by the plaintiff upon the contract was the ratification of the act of Morris & Company, entitling them to the benefits of the contract, and subjecting them to all of its burdens." In support of this proposition, we are referred to a number of decisions, of which *Owens* v. *Boyd Land Co.*, 95 Va. 560, 28 S. E. 950, is a fair sample, holding that the bringing of a suit upon an unauthorized contract amounts to a ratification by the principal. The authorities to this latter effect are unquestionable and overwhelming, but they will be found, upon examination, to relate to cases in which parties originally not bound by the contract have become so bound by virtue of their subsequent ratification. They do not, in our opinion, go far enough to permit a party who was originally an entire stranger to the transaction, and for whom the maker of the contract did not even assume to act, to come in subsequently and by adopting the contract bind the other party without the latter's consent. Even where the agent has, at the time of the

contract, claimed to represent the principal, but has in fact acted without authority, the decisions and text-writers are not altogether agreed as to "whether the principal can by ratifying it acquire the same right to enforce against the other party a contract made on his behalf which he would have had if it had been previously authorized." Mechem's Outlines of Agency (2nd ed.), p. 55, sec. 96. For full discussion of this interesting and debatable question, see Mechem on Agency (1st ed.), sec. 179; 1 Mechem on Agency (2nd ed.), secs. 508-522; 2 Corpus Juris 524; *Atlee* v. *Bartholomew*, 69 Wis. 43, 33 N. W. 110, 5 Am. St. Rep. 101, and Freeman's note thereto, pp. 109-113.

At page 380 of the second edition of his work on Agency, Prof. Mechem, who, in his first edition at section 179 had favored the opposite view, says: "The latter American rule, however, seems open to fewest objections and is likely to prevail. It may, perhaps, be stated thus: Where one *assuming to be agent* but without authority has negotiated a contract *for his alleged principal*, the latter may ratify the act and enforce the contract against the other party when he so ratifies within a reasonable time and before the other party has signified his withdrawal from the negotiation, but not afterward."

We have italicized a portion of the above quotation to call especial attention to the fact that before this doctrine of ratification can apply, the person making the original contract must have assumed to act for a principal.

In *Virginia Pocahontas Coal Co.* v. *Lambert*, 107 Va. 368, 371, 85 S. E. 561, 122 Am. St. Rep. 860, 13 Ann Cas. 277, Judge Buchanan, speaking for this court, said: "It is settled law that where a stranger holds himself out as the agent of another and makes a con-

tract, or does an act, for that other's use, or for his benefit, the latter may ratify.   But it is equally clear, we think, that where the contract made, or the act done, was not in that other's name, and was not intended for his use or benefit, there can be no ratification.   This would seem to be necessarily so from the meaning of the word 'ratify.'   'Ratification,' says Bouvier in his Law Dictionary, 'is an agreement to adopt an act performed by another for us.' "   See also *Schlessinger* v. *Forrest's Products Co.*, 78 N. J. L. 637, 76 Atl. 1024, 30 L. R. A. (N. S.) 347, 138 Am. St. Rep. 627, 631; 1 Mechem on Agency (2nd ed.), sec. 386; 31 Cyc. 1251; 2 Corpus Juris 474.

In the case in hand the contract was made with Abbott Morris & Co. in their own name, and they so treated it.   Morris says in his deposition, "*We bought the property* as a whole, but after the survey Mr. Powell insisted that he should be paid an extra amount, and *as we had made a sale of the property, we eventually agreed* to pay him for any extra acreage he might have." (Italics added.)   When he was asked to sign a deed conveying the property to the appellant, he declined to do so, and although his reasons for declining did not arise out of his objection to the appellant as a purchaser, he did nothing then which conferred upon it any new rights.   It had, as we have seem, no right of ratification, because it had not been in any sense or to any extent either a disclosed or an undisclosed principal. The bare *adoption* of the contract, such as it necessarily relies on in this case, without any semblance of original connection therewith, either disclosed or undisclosed, would have meant simply the making of a wholly new contract, not as of the date of the original, but as of the subsequent date of the adoption;   and this we do not understand any of the authorities to

hold it could have done without the consent of the other party.

We need not consider the question as to what the rights of the appellant might have been under an assignment of the contract from Abbott Morris & Co. It does not sue or claim as assignee.

Whatever, therefore, may have been the rights of the parties as between Abbott Morris & Co. and the appellee, as to which we express no opinion, the appellant was not entitled, for the reason given in the decree appealed from, to enforce the contract of sale, and the decree is accordingly affirmed.

*Affirmed.*