### MARY KLINE BELL v. WALTER ASHTON SMITH, et al.

32 So. (2nd) 829                                  June Term, 1947
December 12, 1947                                      Division B

818

*William J. Wood,* for appellant.

*Strayhorn & Strayhorn,* for appellee.

BUFORD, J.:

We glean from the record before us the existence of conditions as follows:

Chapter 10437, Laws of Florida, Special Acts of 1925, created in certain parts of Glades, Hendry and Lee Counties, Florida, a drainage district designated as "Caloosahatchee Improvement District" to be run and operated by a "Board of

Commissioners"; WITH POWER TO LEVY TAXES AND ASSESSMENTS to be collected by the tax collectors of the respective counties; and in the event of non-payment of such taxes and assessments to sell the lands and issue tax sale certificates in practically the same manner as for non-payment of state and county taxes. If at such sale no person bid for the certificates the tax collector bid them in for the District. If the tax certificates were not redeemed on or before two years then the title to the land vested in the Board of Commissioners of the District. The law further provided for the sale of the land by the Board of Commissioners of the District. The Board of Commissioners of the District had power to issue bonds, and did issue bonds in the district.

The land involved in this section, to-wit: The SW¼ and the NE¼ of the Southeast quarter, and the W½ of the Southeast quarter of Section 18 in Township 43 South of Range 27 East of Lee County, Florida; and lies wholly within said district and subject to taxes and assessments by the district. The taxes and assessments for the year 1925 and subsequent years, except one year, were unpaid and tax certifiicate No. 119 for the unpaid taxes for 1925 was issued by the tax collector of Lee County on August 2, 1926, to the Board of Commissioners of the District, as were tax certificates No. 97 issued September 5, 1927 for unpaid 1926 taxes, and tax certificate No. 174 issued August 6, 1928 for unpaid 1927 taxes, and thereafter no further certificates were issued. At the time such taxes and assessments were levied said land was owned by Haviland Investment Company, a Florida Corporation.

In 1935 the Board of Commissioners of the District settled and adjusted the bonds and outstanding indebtedness and other financial affairs of the district with one R. E. Kurtz, as trustee for the bondholders of the district, and assigned to Kurtz by such settlement, all the unredeemed tax certificates and subsequent taxes unpaid on all the lands in the district.

Thereupon Kurtz formulated a practice and policy of permitting the land owners in the district, owning delinquent taxes, to redeem their respective lands at a greatly reduced amount below the face value of the certificates and subsequent taxes, but would not let or permit any other person to

purchase or redeem such delinquent certificates and taxes below the full face value thereof. In furtherance of this policy and to speedily liquidate such delinquent taxes, Kurtz made it well known to such delinquent land owners that he had adopted said policy. Amended paragraph VI of the bill of complaint sets forth the history of the dealing of Kurtz with the defendants, Walter Ashton Smith and Fort Myers Land Company, who was and is the president of said company, and the owner of all the stock thereof except a nominal amount, and knowing the said policy of Kurtz in handling the delinquent taxes and certificates and that no persons except owners of land could purchase them below the face amount thereof, and that a land owner could buy them at greatly reduced amount, and alleges that defendants "did then and there fraudulently and with the intention of deceiving the said Kurtz and to circumvent and avoid said policy and practice, and with fraudulent intention to deprive the complainant of her interest in said land and her right to redeem said taxes under said policy and practice, did represent to said Kurtz that he, the defendant Walter Ashton Smith, was the owner of said land, or the owner of a part of the stock in Haviland Investment Company, the title holder thereof, and that he represented all the owners thereof and all the stockholders of Haviland Investment Company, and was their agent in handling said lands, and that his dealing with said Kurtz was for and on behalf of said owners and stockholders and that by reason thereof was entitled to purchase the certificates in accordance with said policy and practice, and the said Kurtz not knowing that the said Walter Ashton Smith did not own any interest in said lands and was not a stockholder in Haviland Investment Company and did not represent the owners of said land or the stockholders of said corporation; and the title to said land being vested in Haviland Investment Company the said Kurtz did not know and had no way of knowing who the stockholders were of the owners interested in said lands or in said title holder, and not knowing that said representations of the defendant, Walter Ashton Smith, were false and untrue, did then and there, believing the same to be true and by reason thereof and relying thereon, did then and there sell, assign and trans-

fer said certificates and subsequent taxes to the defendant, Fort Myers Land Company, as he was so instructed by the defendant Walter Ashton Smith, in a strict accordance with said policy and practice, in regard to owners of lands, at and for the sum of $210.00, which was about ten per cent of the face amount of said certificates and subsequent taxes; all of which was done by the said Kurtz by reason of and relying on said false representations made by the defendant Walter Ashton Smith, and had the said Kurtz known the falsity of these representations he would not have sold and assigned said certificates and taxes to the said defendants, but would have held the same to be sold or be redeemed by the owners of said lands in accordance with said policy and practice as above set forth."

The bill of complaint, in effect, alleges that by reason of the representations so made by Smith that he was the owner of the land, a stockholder and agent for the owners of the land, Haviland Investment Company, and the offer by the complainant to repay the amount paid by Smith, it thereby created a trust in Smith and/or the Fort Myers Land Company for the use and benefit of the complainant and was in effect a ratification of the acts of Smith as such pretended agent. The complainant, by her bill of complaint, offered to pay to the defendants such amount as may be found due them on an accounting being had by the court.

The bill of complaint further, in effect, alleges that the defendants Walter Ashton Smith and the Fort Myers Land Company made applications to the defendant D. T. Farabee, as Clerk of the Circuit Court of Lee County, Florida, for a tax deed based on the tax certificate No. 119, issued on August 2, 1926, and that a tax sale would be held by the said Clerk on September 2, 1946, unless said defendant Clerk be enjoined from making such sale; that said certificate is more than 20 years old and barred by the statutes of limitations of the State of Florida; that the issuance of a tax deed thereon would make a cloud on the title of the complainant; and that the certificates and taxes purchased by the defendants as aforesaid cast a cloud on the title of the complainant unless the same are redeemed, all of which the complainant is willing to

do under the terms of said policy of the purchase of land owners.

The Bill of Complaint prayed that the defendants Walter Ashton Smith and Fort Myers Land Company be decreed to hold the tax certificates and subsequent taxes as trustees in trust for the complainant; that an accounting be had to determine the amount owing the defendants by the complainant on such accounting and upon the payment of such amount that the certificates and taxes be cancelled and the title to the lands be quieted in the complainant; and that the defendant D. T. Farabee, as Clerk, be enjoined from selling the land at a tax sale and issuing a tax deed on said certificate issued August 2, 1926.

The defendants, Walter Ashton Smith and Fort Myers Land Company, filed a motion to dismiss the bill of complaint and for grounds said that the bill contained no grounds for equitable relief, that the complainant does not come into court with clean hands; that complainant is guilty of laches and that no fraud is shown to have been committed on the complainant, the court or any officer of the court.

The court sustained the motion to dismiss the bill of complaint as amended; the complainant refusing to amend further the order of court dismissed the bill of complaint as amended.

From which ruling dismissing the bill of complaint the complainant appealed and assigned such ruling as error.

Therefore, we see that the question for our determination is, where one falsely represents to a third party that he is the owner or represents the owner, of the land on which such third party holds tax sale certificates, and thereby procures an assignment of such tax certificates to himself at a price which would be accepted from only the owner of the lands and when owner of the lands learns of the transaction she tenders to the assignee of the certificates the amount which he paid for same, does such assignee thereafter hold the certificates in trust for the benefit of the true owner of the land?

The answer is, yes!

It is well recognized legal maxim that for every wrong there is a remedy, and it therefore follows that where one by

fraud and deception has procured property or a thing of value, equity and good conscience require that he who commits such fraud shall be required to account to the person or persons whom his wrong has injured and that he may not hold the property so acquired and be enriched there by to the detriment of those who have been deprived of a substantial right as a result of his fraudulent act or misrepresentation. Under such conditions a constructive trust may be imposed on the fraudulent actor in favor of the person or persons who have thereby been deprived of the advantage which but for his act would have accrued to them. Especially is this true where, as in this case, the person suffering from the result of the wrongful act, upon the learning of the perpetration of such act in good faith offers to repay to the fraudulent actor such money or value which he has expended in the transaction.

In 54 Am. Jur., Sec. 219, page 169, it is said:

"As Remedy Against Unjust Enrichment.—A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where although acquired originally without fraud, it is against equity that it should be retained by the person holding it. The availability of a constructive trust as a mode of relief against unjust enrichment is not, in general, affected by the fact that the plaintiff has a cause of action at law, as distinguished from equity, for damages or other relief.

"Because a constructive trust arises only after an act of fraud or breach of confidence or duty and as a relief against the same, it is in substance a state of secondary rights and liabilities growing out of violation of a primary right and liability; hence, a constructive trust quite frequently is classified as a division of adjectival rather than substantive law, and it is said that the ground of relief is fraud and not trust.

"It may be added that sometimes it is stated that a constructive trust is not a technical trust, or a division of the subject of technical trusts."

The authorities cited under this text sustain the enunciation thereof.

Although there is no case directly in point as to facts as here presented, numerous authorities indicate this result.

The re-statement of the Law of Restitution, Section 169.

"Where a person acquires property from another by fraud, duress, or undue influence under such circumstances that a third person is entitled to restitution from the transferee, the transferee holds the property upon a constructive trust for the third person."

Scott on Trusts, 3rd Vol. Sec. 471. *Wrong by Transferee to Third Person:*

"Where a person acquires property from another by fraud and thereby prevents the other from transferring the property to a third person as he would have done but for the fraud, a constructive trust may be imposed upon the fraudulent person in favor of the third person . . . "

In Sec. 471.2 of 3 Scott on Trusts:

" . . . There are other situations in which it has been held that where the intention of the owner of property to make a gift to one person has been frustrated by the fraud or other wrongful conduct of another, the fraudulent person is chargeable as a constructive trustee for the intended donee. Thus it has been held that where the defendant, discovering a defect in the plaintiff's title to land, obtained a conveyance of the land for a small sum from the plaintiff's grantor by fraudulently representing that he was acting in behalf of the plaintiff and that his purpose was to cure the defect in the title, the defendant is chargeable as constructive trustee for the plaintiff of the interest so acquired. Rollins v. Mitchell, 52 Minn. 41, 53 N.W. 1020. . . . The underlying principle in all these cases is that where a person acquires property by fraud he can be compelled to surrender the property to the person who would have had it but for the fraud . . . "

39 Cyc. page 172:

"One who acquires land or other property by fraud, misrepresentation, imposition, concealment or under any other such circumstances as render it inequitable for him to retain it, is in equity regarded as the trustee of the party who suffers

by reason of the fraud or other wrong and who is equitably entitled to the property."

A search yielded no Florida cases on this point, but cases outside of the jurisdiction, on facts somewhat similar indicate that a constructive trust will arise under the circumstances of the proposition before us.

"Where a complaint states that the holder of a sheriff's certificate of sale of real estate by fraud and false promises prevented the owner from redeeming within the statutory period, and in violation of his oral agreement to extend the period of redemption, took a sheriff's deed, such facts entitle the aggrieved party to relief in equity."

Prondzinski v. Garbutt, 8 N.D. 191 N.W. 1012.

Further, in the syllabus of this case, it was said:

"Such facts, when established, constitute the wrongdoer an involuntary trustee under section 4263 Rev. Codes."

"A grantee obtained a conveyance in his own name by falsely representing to the grantor that the conveyance was made for the benefit of a third person, who was in possession of the premises, and the grantor was induced to make the conveyance because of his belief that he was thereby curing defects in former conveyances to the third person. The grantee paid the purchase mony out of his own funds. Held, that the grantee was a trustee ex maleficio for the benefit of the third person."

Virginia Pocahontas Coal Co. v. Lambert, 107 Va. 368, 58 S.E. 561.

The last cited case seems to constitute sufficient ground on which to hold a constructive trust here. In this last cited case a constructive trust was allowed even though the court would not hold that the conveyance beyond to the third person on theory of ratification of self-appointed agent's act.

So the order dismissing amended bill of complaint is reversed and the cause remanded for further appropriate proceedings.

So ordered.

THOMAS, C. J., ADAMS and BARNS, JJ., concur.

BARNS, J., dissents.