**WALKER et al. v. GALT et al.**

No. 12343.

United States Court of Appeals
Fifth Circuit.

Nov. 17, 1948.

As Amended on Denial of Rehearing
Dec. 23, 1948.

Writ of Certiorari Denied March 7, 1949.
See 69 S.Ct. 656.

Thomas H. Anderson, of Miami, Fla., for appellants.

James M. Crum and C. A. Hiaasen, both of Ft. Lauderdale, Fla., for appellees.

Before HUTCHESON, SIBLEY, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Appellee Galt and his wife, citizens of Illinois, sued W. H. Meeks and wife and Horace E. Walker and wife, who are citizens of Florida, to cancel a deed to certain land in Florida made by the Galts to the Meeks on Nov. 18, 1946, and one from the Meeks to the Walkers made on Nov. 30, 1946, both duly recorded Dec. 2, 1946. The suit was filed Jan. 6, 1947, and offered to do equity by depositing the consideration received by the Galts in court for its disposition. The answer of the Walkers, the Meeks not defending, denied the fraud alleged, and set up that since acquiring the land and prior to the institution of the suit they had expended $15,000 in making alterations and repairs to the building. There were no prayers in the answer.

The court found that Walker, though not personally known to the Galts, who owned for subdivision purposes a large tract of mostly undeveloped land fronting the Intracoastal Canal on its east side and traversed by U. S. Highway No. 1 on the west side, had trespassed by tying up on the Galts' land his "Showboat", which was a floating house of prostitution, and had trespassed by making a road from the highway across the Galts' land to a public house of Walker also reputed to be used for prostitution, concerning which the Galts had filed a suit against Walker on Sept. 12, 1946; so that the Galts would under no circumstances have sold Walker the land now in controversy, five acres on the highway on which during the Florida boom of 1926 had been erected a substantial building of twenty rooms besides a large public room, to serve as the Administration Building for the intended subdivision. Besides the personal hostility, Walker's reputation was such that his presence and ownership near the center of the Galts' land would discourage buying on the part of others and hurt sales. This was known to Walker, who testified he had tried without success to buy this very piece of property for several years. Galt's properties were in charge of a local real estate

dealer, Hoskins, who negotiated all sales including this one, and Hoskins would not have recommended a sale to Walker, but did recommend the sale to Meeks whom he knew favorably, and who said he was going to buy it and improve and fit it for a hotel and public restaurant, and live there with his wife. There was some conflict between the testimony of Meeks and Hoskins as to which approached the other, but none that Meeks bought for Walker and with Walker's money, though stating his intentions as above, and that Hoskins and Galt believed they were selling to Meeks. The court accepted Hoskins' account, and found there was collusion between Meeks and Walker, operating both by suppression of the truth and misrepresentation of it. It was decreed that the deeds be cancelled, the $25,000 paid by Walker paid, without interest, into court, and that a mortgage put on the property by Walker dated Dec. 2, 1946, for $8,000, and another on Feb. 14, 1947, for $7,500 be paid therefrom with costs of litigation, and the remainder, less than $9,000, paid over to Walker on his vacating the property. It was held that Walker was not entitled to anything for repairs and improvements on the property, and the evidence about them was cut short.

■ 1. The decree of cancellation was justified. "The vendor has the right to select the person to whom he will sell and may rescind if intending to sell to one person he is deceived as to the purchaser's identity and thus induced to enter into a contract with one to whom he did not intend to sell. In other words, fraud may be predicated upon misrepresentations as to the identity of the purchaser or as to the person for whom the ostensible purchaser acts, where the vendor would not have entered into the contract had he known the true identity of the purchaser." 55 Am.Jur., Vendor and Purchaser, Sec. 96. Thompson v. Barry, 184 Mass. 429, 68 N.E. 674. The materiality as an element of fraud, of deceit as to the identity of one offering to contract, as a ground for equitable relief, was sustained in Florida in the recent case of Bell v. Smith, Fla., 32 So.2d 829, 175 A.L.R. 695, though the remedy sought was not cancellation but the declaration of a constructive trust.

■ 2. The deed of the Galts contains covenant restrictions as to the use and occupancy, one being that the property should be used solely for residence, hotel, restaurant, or other legitimate business purposes and no part thereof for any illegal or immoral purpose; and another being that no part of the premises should be sold to or used or occupied by a person of any race or descent other than Caucasian, White or Aryan. Walker urges that these provisions safeguard the property from any misuse such as the Galts fear, and disentitle them to cancellation. We do not think so. As to race restrictions, Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, seems to render such unenforceable in court, leaving them for effect to the honor of the covenantors. As to use for illegal and immoral purposes, while there is no proof that Walker tried or intended to misuse the property, his reputation on those lines was such that the Galts and others feared he would. The right of the vendor to choose his purchaser is not destroyed but rather emphasized by these considerations.

■ 3. We find no fault with the trial or decree except the refusal to consider the matter of repairs and improvements. Mainly relied on to support the court's action is Griffin v. Bolen, 149 Fla. 377, 5 So.2d 690; in which an administrator bought at his own sale through a confederate all the real property of the estate which he represented for one-twentieth of its value, to wit, $167 claimed by him as commissions. His title deeds were cancelled and no recovery was allowed for improvements or purchase price. It will be noted that this unfaithful administrator forfeited his right to commissions by his misconduct, and so paid the estate nothing by way of purchase money. Also his title, as he well knew, was corrupt and dishonest because of his breach of trust. A court of equity may and should go to the limit in punishing a trustee for mishandling the trust property. The present case we think is materially different, though a fraud is involved. It falls rather under the general rule that "An actor in equity comes into a court of conscience and will not be allowed unconscionable relief, nor relief otherwise than under the condition that he does equity upon his part. This rule will aid a defendant, even if he could not have secured equitable relief had he been the actor," quoted from 1 Pomeroy Eq.Jur., Secs. 386, 388, in Taylor v. Rawlins, 86 Fla. 279, 97 So. 714, 35 A.L.R. 271. In that case as a condition of equitable relief by cancellation (though not for fraud) the vendor was required to return to the vendee all amounts paid by virtue of the contract, less damage done under it, and any other financial benefit accruing to the vendor. The court cites with approval Lytle v. Scottish American Co., 122 Ga. 458, 50 S.E. 402, where Justice Lamar discusses fully the accounting and cites many cases. The equitable rights of the defendant in a cancellation decree are recognized in a fraud case, and required to be effectuated though the complainant had spent the purchase money and was unable to replace it, in Thackrah v. Haas, 119 U.S. 499, 7 S.Ct. 311, 30 L.Ed. 486. These rights are treated fully in 12 Am.Jur., Cancellation of Instruments, Secs. 39, 40, 41. Among them is the increased value to the vendor of the premises by improvements added which cannot be removed, there being however a diversity of view as to the effect of fraud. On this point see 12 C.J.S., Cancellation of Instruments, § 83(2). The true equity of the matter is to consider in the first place whether the improvements are useful to the vendor and add market value to the property. Their cost to the vendee is not the measure, but the inequitable enrichment of the vendor arising from his election to rescind and cancel the voidable sale. The attitude of the vendee in making them is of the essence of his right. It is only when he makes them in the bona fide belief that his title will stand that he ought to be favored. Tested by these principles, improvements made after this suit was filed ought not to be allowed, and are not claimed in the answer. It appears that Hoskins, the general agent of the Galts, saw Walker on the premises clearing and smoothing them with a bulldozer in the last days of November, 1946, that Walker then informed him that he owned the property, and Hoskins asked, "What are you going to do?" and Walker said, "I am going to

**616**

conduct a strictly high class, respectable club here." Hoskins said, "Well, that would be advisable, because if Mr. Galt found out you were doing anything else there would be trouble"; and Walker said, "I have reformed, and the first man that comes in here and asks for a gal, he is going to get kicked out in the street." This is Hoskins' version of the interview. Walker testifies that they shook hands on it, which Hoskins denies. Hoskins at once reported to Galt that Walker was the purchaser. Walker borrowed on the property on Dec. 2, $8,000 which he testifies went into improving the grounds, in putting plumbing into the building, in replastering most of the walls, and painting the inside, and remodelling the large room for a restaurant. Most but not all of the work was done by Jan. 6th when he was sued. He borrowed $7,500 more in February which he says went to pay for the improvements also. He and his wife moved in, but it does not appear when the place was opened for business and whether it was decently run. He offered to produce his bills, but the evidence was cut short by the ruling above mentioned and no fact findings were made, but only a conclusion of law that no improvements were allowable. We are of opinion that the showing ought to have been completed and the facts found. Walker may have made the improvements in line with the uses permitted by the deed and so far as appears intended in good faith to live by the deed. He might well have felt assured by his conversation with Hoskins that if he did so, all would be well. The improvements and repairs could well have been such as would benefit the sale of the building for such purposes hereafter; and it was to be fitted out by Meeks as a hotel and restaurant in the sale to him.

The decree is affirmed as to cancellation, but the cause is remanded for a further hearing and an equitable accounting as to the repairs and improvements claimed, taxes paid, use of purchase money by appellee and use and occupancy of the premises by appellant, and other matters proper to be considered as a result of the cancellation. The costs of this appeal will be borne half by the appellants and half by the appellees.