JOHN H. ROLLINS *vs.* JETHRO MITCHELL *et al.*          |52   41|
                                                         |66  375|

Argued Dec. 7, 1892.   Decided Dec. 23, 1892.

**Deed Given in the Belief that it is to Aid a Former Invalid Deed.**

*Held*, that the evidence required a finding that the plaintiff (a stranger to the title) obtained a conveyance from defendants' grantor of the same land by representing to her or giving her to understand that it was in support of her original defective or invalid deed to the defendants.

**Same—Grantee Holds in Trust for the Former Grantee.**

Also that, such being the fact, the plaintiff would hold the title as trustee *ex maleficio* for the defendants.

**Same—Although the Last Grantee is Stranger to the First.**

To render the plaintiff chargeable as trustee it is not necessary that he should have sustained a fiduciary relation to the defendants as respects the title, or that the defendants should have had some claim to the land which they could have enforced against the grantor in the deed. The right of the third person, in such cases, depends not upon his having some legal or equitable claim to the property before the constructive trust was created, but upon the fact that he acquired such right by the trust, as being the party for whose benefit the property was intended by the owner.

Appeal by defendants, Jethro Mitchell and Wellington R. Burt, from a judgment of the District Court of Carlton County, *Stearns, J.*, entered September 23, 1892.

Josephine Gabiou on December 1, 1869, received a patent from the United States for the south half of the northwest quarter and the north half of the southwest quarter of section thirty-four, (34,) in T. 48, R. 16, in Carlton county. She then married Daniel Wright, and afterwards on September 7, 1872, conveyed the land to James Bardon; and he on October 16, 1872, conveyed it to John D. Howard; and he on July 29, 1880, conveyed it to Wellington R. Burt, who on October 23, 1889, conveyed this and a large amount of other land to Jethro Mitchell and took back a mortgage for $200,000. Each deed contained covenants of warranty and was duly recorded. On November 17, 1890, Monroe Nichols contracted with Mitchell and one McClure to purchase the entire section, six hundred and forty

acres, including this land, for $48,400, but the purchase was not carried out because it was learned that Mrs. Gabiou was married to Wright at the time she made her deed and her husband did not join in its execution. Nichols soon after obtained a deed of this one hundred and sixty acres from Mrs. Gabiou to the plaintiff John H. Rollins, in the manner stated in the opinion. Rollins commenced this action against the defendants to determine their adverse claim to the land. Mrs. Gabiou or Wright on August 21, 1883, obtained a divorce from her husband. Soon after Rollins commenced the action, and before defendants answered, he conveyed the land to Charles B. Marvin and he intervened in the suit. Marvin gave back to Rollins a mortgage on the land for $8,500. The other facts appear in the opinion. The trial court made findings and ordered judgment for the intervener that he was the owner of the land in fee, and that defendants had no title. Judgment was entered accordingly, and defendants appeal.

*W. W. Billson*, for appellants.

The quitclaim deed from Mrs. Gabiou having been secured by Nichols, by giving her to understand that it was to support the Bardon title, the grantee named in that deed is chargeable as trustee *ex maleficio* for those claiming under Bardon. *Moore* v. *Crawford*, 130 U. S. 122; *Dohoney* v. *Womack*, 1 Texas Civ. App. 354; *Soye* v. *McCallister*, 18 Texas, 98; 1 Bigelow, Fraud, 459; *Lark* v. *Linstead*, 2 Md. Ch. 168; *Hooker* v. *Axford*, 33 Mich. 453; *Reech* v. *Kennegal*, 1 Ves. Sr. 125; *Brown* v. *Lynch*, 1 Paige, 147; *Allen* v. *Macpherson*, 1 Phil. Ch. 133; *Ryan* v. *Dox*, 34 N. Y. 307; *Merrett* v. *Poulter*, 96 Mo. 237; *Caple* v. *McCollum*, 27 Ala. 461; *Gilmore* v. *Johnson*, 29 Ga. 67; *Miller* v. *Antle*, 2 Bush, 407; *Roller* v. *Spilmore*, 13 Wis. 26; *Piper* v. *Hoard*, 107 N. Y. 67.

Irrespective of Mrs. Gabiou's intentions in executing the quit claim, the interest thereby acquired inures to the benefit of Mitchell. *Galloway* v. *Finley*, 12 Pet. 264; *Murrell* v. *Goodyear*, 1 De G., F. & J. 432.

The intervener, Marvin, is in no better position than his grantor, Rollins. By his own confession, he bought with actual knowl-

edge that the title to the land was in litigation. Freeman, Judg. § 199; *Bellamy* v. *Sabine,* 1 De G. & J. 566; *Tyler* v. *Thomas,* 25 Beav. 47.

*Edward Fuller* and *Davis, Kellogg & Severance,* for respondents.

The deed from Josephine Gabiou to James Bardon, under which the defendants claim, is absolutely void under our married woman's act because her husband did not execute it with her. 1878 G. S. ch. 69, § 2; *Gregg* v. *Owens,* 37 Minn. 61; *Yager* v. *Merkle,* 26 Minn. 429; *Nell* v. *Dayton,* 43 Minn. 242; *Place* v. *Johnson,* 20 Minn. 219, (Gil. 198;) *Tatge* v. *Tatge,* 34 Minn. 272; *Cole* v. *Van Riper,* 44 Ill. 58; *Scovil* v. *Kelsey,* 46 Ill. 344; *Carn* v. *Haisley,* 22 Fla. 317; *Bressler* v. *Kent,* 61 Ill. 426; *Cook* v. *Walling,* 117 Ind. 12.

The wife cannot ratify this agreement or be estopped so as to make it valid. *Cook* v. *Walling,* 117 Ind. 12; *Buchanan* v. *Hazzard,* 95 Pa. St. 240; *Bank of America* v. *Banks,* 101 U. S. 240; *Sims* v. *Everhardt,* 102 U. S. 300; *Keen* v. *Coleman,* 39 Pa. St. 299; *Klein* v. *Caldwell,* 91 Pa. St. 140; *Morrison* v. *Wilson,* 13 Cal. 495; *Todd* v. *Pittsburg, Ft. W. & C. R. Co.,* 19 Ohio St. 514; *Merriam* v. *Boston, C. & F. R. Co.,* 117 Mass. 241.

Defendants claim to hold Rollins as a trustee. They must recover upon some legal ground, not upon the ground that Mrs. Gabiou in morals should have conveyed the land to Mitchell though under no legal obligation to do so. The defendants treat Rollins, for whom Nichols was agent, as a trustee *ex maleficio,* and the ground of this constructive trust is fraud.

To entitle defendants to recover in this case it was necessary for them to prove that Nichols procured the deed from Mrs. Gabiou by fraud or that he obtained it under an agreement with Mitchell or somebody representing Mitchell to fix up the title for him. Every element of fraud is absolutely wanting, for if Nichols had no arrangement with Mitchell or Bardon he was at liberty to deal with Mrs. Gabiou as he saw fit. There was no privity of contract between Mitchell, McClure or Bardon and Mrs. Gabiou. None of them had any rights that they could enforce against her, therefore they could not treat Rollins or Nichols as trustee, except upon the ground of

fraud, and that fraud must be, that Nichols agreed to procure this deed for the benefit of Mitchell and procured it for the benefit of himself, or for Rollins for whom he acted as agent. In the absence of fraud Mitchell and McClure could not treat Rollins as a trustee, unless they had such equities as would control the legal title in Mrs. Gabiou and which they could enforce against her. *Whiteman* v. *Severance*, 46 Minn. 495; *Bohall* v. *Dilla*, 114 U. S. 47; *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 365; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Lee* v. *Johnson*, 116 U. S. 48; *Winona & St. P. R. Co.* v. *St. Paul & S. C. R. Co.*, 26 Minn. 179; *Sparks* v. *Pierce*, 115 U. S. 408; *Bangs* v. *Stephenson*, 63 Mich. 661.

Marvin, the intervener, is an innocent purchaser; he at least, is entitled to have this case heard on legal principles, and not on blatant declarations of moral principles. At that time the defendants had not set up any counterclaim alleging fraud, nor had they filed notice of *lis pendens*. *Reimer* v. *Newel*, 47 Minn. 237; *Jorgenson* v. *Minneapolis & St. L. Ry. Co.*, 25 Minn. 206; *Wortham* v. *Boyd*, 66 Texas, 401; *Missouri Pacific Ry. Co.* v. *Maffitt*, 94 Mo. 56; *Valentine* v. *Lunt*, 115 N. Y. 496.

MITCHELL, J. This was an action to determine an adverse claim of defendants to certain real estate. The defendants set up by way of counterclaim, as well as defense, facts from which they claimed that plaintiff held the title as trustee *ex maleficio* for defendant Mitchell. Marvin, the intervener, purchased from the plaintiff during the pendency of the action. This appeal is from a judgment in favor of the plaintiff and the intervener.

Although we have concluded that the case is controlled by the weight of the evidence upon a single issue of fact, yet, in order to fully understand the testimony, it is necessary to state briefly the history of events leading up to the particular transaction involved in that issue.

In 1872 a Mrs. Gabiou or Wright, then a married woman, and the owner of the land in controversy, sold it to one Bardon, and executed to him her sole deed, and, presumably for the purpose of validating this deed, her husband shortly afterwards executed to Bardon an-

other deed, in which, however, his wife did not join. Subsequently Bardon conveyed to one Howard, who conveyed to defendant Burt, who in turn conveyed to defendant Mitchell, all by warranty deed. In November, 1891, one Nichols applied to one Louden, Mitchell's agent, to purchase the land, and took from him a written contract of sale, and paid $1,000 as earnest money. Although not material, under the view we take of the case, it may be stated that this contract was not binding on Mitchell, because Louden had no written authority to execute it. Pursuant to the terms of this agreement, Louden furnished Nichols an abstract of title, from an examination of which the latter discovered that Mitchell's title was invalid for the reason that Mrs. Gabiou's husband had not joined in her deed to Bardon,—a defect which was not cured by the subsequent deed of the husband, in which the wife did not join. Thereupon Nichols notified Louden of the defect in the title, and that for that reason he refused to complete the purchase, and demanded back his $1,000. Almost immediately thereafter Nichols went to Bardon, and obtained from him Mrs. Gabiou's address, which was at a small village in Michigan, several miles out from Detroit, to which she had removed on leaving this state. There is a conflict of testimony between Nichols and Bardon as to the representations by the former as to the purpose for which he wanted this woman's address, but neither do we consider this material.

After getting Mrs. Gabiou's address, and assuring himself by wiring to a party in Detroit that she was still there, Nichols, without informing Mitchell or his agent of his intention, immediately started for Detroit, and, on arriving there, in company with a notary named Race, and one Summerville, who had just previously ascertained for him Mrs. Gabiou's exact whereabouts, drove out to her residence, with a draft of a deed already prepared, and procured her execution of it for the nominal consideration of $1, and a few days afterwards sold the land to the intervener for $10,000. Nichols took the deed in the name of the plaintiff, Rollins, who resided in Chicago, but it is quite apparent that the latter was a mere figurehead. At least it was admitted on the trial that Nichols, in all he did, represented the plaintiff, and that the latter stood in no

better position than Nichols would, had he been acting for himself. Hence we shall hereafter treat Nichols as if he were the plaintiff, and the principal in the transaction.

With this preliminary statement explaining the situation of the parties and their relation to the property and to each other, we come to the consideration of the evidence as to what occurred at this interview at which Nichols secured this deed from Mrs. Gabiou; the question which we consider as controlling the case being whether this evidence was such as to require a finding that Nichols secured this deed by giving Mrs. Gabiou to understand that it was in support of her original conveyance to Bardon. If he did, it is clear on well-settled equitable principles that he is chargeable as trustee *ex maleficio* for those claiming under Bardon. No one else being present, (Mrs. Gabiou apparently living alone,) the only direct evidence as to what occurred on the occasion referred to is the testimony of Mrs. Gabiou, Nichols, and his two companions, Summerville and Race. Mrs. Gabiou's testimony is positive to the effect that Nichols told her that he had bought the land of Bardon, and that he wanted the deed, because he was about to sell it again. But, as the finding of the court cannot be disturbed if there is a fair conflict of evidence, we must look to the testimony of Nichols, Summerville, and Race. Mrs. Gabiou, who was about 58 years old, was an illiterate woman, unable even to write her name. Nichols and his two companions were all entire strangers to her, with whom she had had no previous dealings, and who had no claim whatever upon her generosity. Nichols denies that he told her that he had bought the land of Bardon, or that he wanted the deed to fix up the Bardon title, but says that he told her that her deed to Bardon was void, and that he (Nichols) wanted to buy her interest in the land, his position being that he bought the land of her as an original purchaser. But both he and his companions all admit that when they went into the house he opened the conversation on the subject by calling her attention *to her having sold the land to Bardon*, thus placing that fact, and not her ownership of the land, in the foreground, as the basis of the interview. Again, Nichols admits that he told her *that Bardon had given him her address*. It is clear that the impression which these state-

ments would naturally produce on the mind of such a woman would be that Bardon (whose friend she had been since his childhood) had sent Nichols for a second deed, or at least that he desired her to execute one. Indeed, it is difficult to imagine any other object in Nichols making the second of these statements, except to convey this very impression to her mind. She would not be likely to suppose that Bardon had furnished Nichols her address for the purpose of enabling him to buy the land out from under him or his grantees. Again, Race's testimony, which is not controverted, is that Nichols told her that her deed to Bardon was invalid, and that he had come to get a *new* conveyance. This is the natural language of one whose object is to cure a defective title, and not of one negotiating for the purchase of property upon which he has no claim. But, further, in every negotiation for the purchase of property the questions which always come up at the very outset are as to its character and value, what the owner will take for it, and what the proposed purchaser is willing to give. Yet, according to all the witnesses, *there was not even a passing allusion to any of these subjects during the entire interview.* Apparently not even the one dollar named in the deed as the consideration was mentioned until after it was delivered, when Nichols, after being unable to find a dollar in change among his companions, handed Mrs. Gabiou a five-dollar bill, remarking that the consideration of the deed was one dollar, and that he made her a present of the balance. Now, although, as suggested by plaintiff's counsel, she may not have entertained a very high idea of the country in which this land is situated, it is utterly inconceivable that this woman should, without a word as to value or quality, have given away to an entire stranger both to her and to the title one hundred and sixty acres of land, which she was told, according to plaintiff's witnesses, that she still owned. Apparently conscious of the gross improbability of such a thing, Nichols attempts to show a consideration for the deed in addition to the one dollar. It appears that during the interview Mrs. Gabiou mentioned that her deceased husband had once owned another tract of land in the same vicinity, and that when she left the country some twenty years before it had been left in charge of a relative, but that she had never heard

of it since, and did not know what had become of it, or whether it had been sold; and that Nichols told her he was frequently up in that county, and that he would "look it up." He testified that they had "what did *seem* to him then, and does now," a verbal agreement that he was to perform certain services in connection with "looking up" this other land, and this it is now claimed was the consideration for the deed. This claim is too transparent to be entitled to serious notice. The idea that even this illiterate woman would give away a tract of land, which she was assured she did own, in consideration of some sort of an indefinite promise by a stranger to "look up" another tract which she did not know whether she owned or not, is too preposterous for belief. It is perfectly apparent from the evidence, as Race was compelled to admit, that the talk about looking up the other land was a mere desultory conversation, and was not understood by any one as entering into the consideration for the deed; that, at most, it was merely a matter that might or might not be made the subject of future deals between them; and, without going into details, it is perfectly evident from Nichols' subsequent conduct that this was all there was of it.

It may be said that the fact that Mrs. Gabiou presumably knew that the deed did not run to Bardon tends to show that she did not execute it to validate or support the Bardon title. But in this connection two significant facts should be noticed : *First*, Nichols told her *that Bardon had sold the land;* and, *second,* although he says he did not tell her that he had bought from Bardon, yet he *did not tell her that he had not done so.* It is also to be noticed that it nowhere appears that even after she was informed of the invalidity of her original deed to Bardon did Mrs. Gabiou assert any claim or right to the land, unless such claim is implied in the mere act of executing this second deed. On the contrary, all her remarks on the subject, so far as they go, are in the direction of a disclaimer of any interest in the land which she had sold and received her pay for, some eighteen years before, thus apparently recognizing a moral, although not legal, obligation not to assert any such claim. There are other features of the case that might be referred to if time permitted, but it is

enough to say that, in our judgment, the entire evidence irresistibly compels the conclusion that Nichols secured the deed by giving Mrs. Gabiou to understand, or by conveying to her the impression, that it was in support of her original conveyance to Bardon, and to validate the Bardon title, and that she executed it under that impression, and supposing it would have that effect.

It is not necessary that Nichols should have expressly told her that he or the party for whom he was acting had purchased of Bardon, and that the deed was desired for the purpose of fixing up that title. It is enough to hold him chargeable as trustee if he by indirection gave her to understand, or by any means intentionally conveyed to her mind the impression, that such was the fact. A person may make a false representation or fraudulent promise by indirect as well as by direct statements, and even by keeping silence when he ought to speak. *Wallgrave* v. *Tebbs*, 2 Kay & J. 321; *O'Hara* v. *Dudley*, 95 N. Y. 403. It is urged, however, that, although a fraud may have been committed on Mrs. Gabiou, none was committed on defendant Mitchell; that to charge Nichols, as trustee for Mitchell, either the former must have sustained some fiduciary relation to the latter in respect to the title, or the latter must have had some claim to the land in the hands of Mrs. Gabiou, which he could have enforced against her. We do not so understand the law. The rights of the third person in such cases depend, not upon the fact that he had some legal or equitable claim to the property before the constructive trust was created, but upon the fact that he acquired such right by the trust, as being the party for whose benefit it was intended by the former owner. The proposition is thus tersely put by Lord Eldon in *Mestaer* v. *Gillespie*, 11 Ves. 638, where, in referring to an earlier case, in which Lord Thurlow held a trust in favor of a volunteer, he says: "In this case, as in that, the party comes here saying he has neither a legal nor equitable title, but that he was prevented by the fraud of the defendants from having a legal title, desiring the court, on account of that fraud, to make him a good legal title."

The most common illustration of the principle is to be found in that familiar class of cases where a party has procured a will or deed

to be made in his favor under a fraudulent promise that the property would be received and applied to the benefit of a third person. In such cases the devisee or grantee is charged as trustee for such third person, notwithstanding that the former sustained no fiduciary relation towards the latter, and although the latter had no claim to the property which he could have enforced against the testator or grantor. Thus it is said: "If a person, by his promises, or by any fraudulent conduct, with a view to his own profit, prevents a deed or will from being made in favor of a third person, and the property intended for such third person afterwards comes to him who fraudulently prevented the execution of the will or deed, he will be held to be a trustee for the person defrauded to the extent of the interest intended for him; * * * and where a person fraudulently intercepts a gift intended for another by promising to hand it over if it is left to him, equity will compel an execution of the promise by converting such person into a trustee." Perry, Trusts, § 181. Pomeroy states the doctrine as follows: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealment, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, *although he may never perhaps have had any legal estate therein.*" Pom. Eq. Jur. § 1053.

Within this general principle, if Nichols secured this deed by giving Mrs. Gabiou to understand that it was in support of her original conveyance to Bardon, then he is chargeable as trustee for Mitchell, who holds the Bardon title.

Marvin, the intervener, according to his own confession, bought with actual knowledge that the title was in litigation in this suit, and that Mitchell made some claim to the land adverse to the plaintiff. It is not important that he bought before defendants served their answer, and consequently may not have known the particular grounds on which the claim was founded. He saw fit to buy with-

out inquiring of defendants as to the character or basis of their claim, and is chargeable with notice of all the facts which, presumably, such inquiry would have given him.

Judgment reversed, and new trial ordered.

(Opinion published 53 N. W. Rep. 1020.)