CLAUDIA H. WUNDER v. JOHN WUNDER.[1]

October 7, 1932.

No. 28,942.

[1]Reported in 244 N. W. 682.

*William M. Nash, Chester L. Nichols,* and *Reuben G. Thoreen,* for appellant.

*Fowler, Carlson, Furber & Johnson, H. C. Carlson,* and *F. N. Furber,* for respondent.

STONE, J.

In this action on a money demand a verdict was directed for defendant. Plaintiff was denied a new trial and appeals.

Defendant is the father of Harvey J. Wunder, who departed this life April 27, 1930. As assignee of the policies he has collected the proceeds of the second block of insurance, hereinafter considered, on the life of Harvey.

Plaintiff's "claim is that the assignments of said policies of insurance were procured by fraud, that a constructive trust *ex maleficio* in the proceeds of the insurance policies was thereby created, that the plaintiff is the beneficiary thereof and, therefore, entitled to recover said insurance money from the defendant, she being the person whom the insured intended to be the beneficiary."

Defendant is a Minneapolis business man of large means, said to have attained the age of 74 years in 1931. His son, Harvey, had been associated with him in business and died at the age of 41. He had been twice married and left him surviving three children of his first marriage, and one of his second, to plaintiff, whom he wed in 1926. Defendant also has a daughter, Florence, wife of George H. Hitchcock. They have three children.

As matter of evidence there is what counsel call the "first insurance." Negotiated in 1926, it consisted of two $100,000 issues,

one on the life of the son-in-law, Hitchcock, and one on the life of the son, Harvey. The policies, issued by the New York Life Insurance Company, were payable to the "executors, administrators or assigns of the insured." They were assigned by the insured to defendant December 21, 1926. March 14, 1927, defendant caused so-called insurance trusts to be effected, the beneficiaries being first the wives of the insured and secondarily their children. He reserved to himself the right to change beneficiaries at will. It is inferable that neither Hitchcock nor Harvey Wunder had the means to buy insurance in such amounts. Anyway, all premiums were paid by defendant. That is, on the money side he furnished all the consideration there was; he conducted all negotiations with the agent and was distinctly the sole and real purchaser of the policies.

The soliciting agent was Mr. John Cogan. While effecting the sale of the first policies he conceived the idea that he could sell an additional $150,000, not to Hitchcock nor Harvey, but to defendant. Without anybody's permission, solely on his own initiative, Cogan caused two policies insuring Harvey, one for $100,000 and the other for $50,000, to be sent on. This action is for their proceeds. Without going into the details of his successful salesmanship, Cogan delivered the policies and collected the first premiums in May, 1927. Payable as before to the estate of the insured, both policies were immediately and unconditionally assigned by Harvey to defendant— that is, written assignments were executed and delivered which on their faces are absolute.

It is here that plaintiff's claim really takes hold of the facts, for there is testimony, principally by Mr. Cogan, that when defendant procured the assignments from Harvey the latter exacted a promise that the insurance would be held by defendant for the benefit of plaintiff, and that in case of the death of Harvey, defendant surviving, the latter would collect the insurance for her. Plaintiff does not claim at law as a donee beneficiary (Am. Law Inst. Restatement of Contracts, § 133) of any contract between her husband, since deceased, and defendant. Rather, and in equity, she charges defendant as a trustee ex maleficio. We have no occasion to con-

sider the inherent difference between resulting trusts on the one hand and constructive trusts on the other. Sieger v. Sieger, 162 Minn. 322, 202 N. W. 742, 42 A. L. R. 1; 3 Pomeroy, Eq. (4 ed.) §§ 1031 and 1044. What is here claimed is distinctly a constructive and not a resulting trust.

■ Next to be noted by way of elimination is that there has been here, from the legal standpoint, no unjust or unconscionable enrichment by defendant. By that we do not mean to pass upon the question whether he has broken a promise or changed an expressed intention, but only to say that he himself furnished all the money which went to purchase the insurance. So, to the extent that he has been enriched, he is but getting back his own, with the increment added by the insurance operating on the untimely death of his son. He is not reaping where others have sown. He is but garnering a harvest of his own seeding. That is important, because the obligation of a constructive trust, like that of a quasi contract, is but a remedial device to "prevent unjust enrichment." Pound, *Consideration in Equity,* 13 Ill. L. Rev. 669. Admitted, then, must be the absence of the one justifying basis for the imposition upon defendant of the obligations of a trustee ex maleficio. Whatever else he has done, he has not enriched himself with the property of others. He himself furnished the consideration, the purchase price of the insurance. "The consideration draws to it the equitable right of property; the person from whom the consideration actually comes, under whatever form or appearance, is the true and beneficial owner." 3 Pomeroy, Eq. (4 ed.) § 981. Substance rather than form controlling, "the owner of the money that pays for the property should be the owner of the property" (Sieger v. Sieger, 162 Minn. 322, 325, 202 N. W. 742, 42 A. L. R. 1) until he has parted with it, which plainly defendant has not done.

■ We cannot confine our consideration to the conversation which, according to the testimony, took place between defendant and Harvey when the last two policies were unconditionally assigned to defendant. Were we to stop there, it may be assumed arguendo that a contract was the result, of which plaintiff might

claim as a donee beneficiary or out of which might have come a constructive trust. But the transaction did not start there. Defendant negotiated the insurance. Harvey had nothing to do with it except to be examined physically. Defendant paid the premiums; and in view of what he did with the first block of insurance, and an identical reservation of control over the ultimate disposition of the proceeds of the second block, it is plain as matter of law that, while defendant was making a gift of insurance to daughter and son and their respective families, the donation was to remain executory, defendant retaining the right to designate his ultimate donees. As a whole the transaction admits no other accurate characterization. Intended donees there were, but they were the donees of defendant rather than of his son, the insured. As correctly said by Dean Pound [13 Ill. L. Rev. 671] in the paper from which we have already borrowed, courts refuse "to enforce gifts put in the form of contracts." Of course they will not disturb an executed gift, but neither will they complete one that remains executory.

It was not essential to recovery by plaintiff that the money be hers, or "the proceeds of property or the issue of a fund" which she actually owned or to the possession of which she was entitled. Seastrand v. D. A. Foley & Co. 144 Minn. 239, 243, 244, 175 N. W. 117, 119. There the "boldly" controlling factor was that the defendant had received and kept "money in payment for work which plaintiff in good faith performed and for which plaintiff has not been paid." Manifestly, and so held, it was a plain case of enforceable obligation arising quasi ex contractu. There was present the one essential [144 Minn. 243] "that the money in equity and good conscience belongs to plaintiff." Very different is this case because of the "boldly" outstanding fact that neither plaintiff nor the insured ever owned the fund, legally or equitably, and contributed not at all by effort or other outlay to its creation. On the contrary, the stake is solely the fruit of the effort of defendant and the expenditure of his money.

The only contribution claimed from anyone other than defendant is that Harvey submitted himself to physical examination and his life to insurance to the extent indicated, thereby reducing, it is said,

the amount of the possible additional insurance which he might have procured. Of whatever weight that factor might be otherwise, it is of no controlling importance here, because, as already indicated, what he did was but in aid of defendant's executory gift of the insurance, and upon condition, obviously, that it should be assigned to him, and that he should retain the right ultimately to designate the beneficiaries. Correspondence in evidence indicates that this intention of defendant's was understood by all concerned in its issue. These letters demonstrate that defendant as long as he lived proposed to have the right to change the beneficiaries at will. That right as to the second block of insurance he never surrendered. (As to the first block of insurance, which at the time of Harvey's death was trusteed for the benefit of his children; defendant's right to revoke was lost. Upon the death of the insured the policies ripened as a death claim.)

■ There is assertion of a confidential relation between Harvey Wunder and defendant, his father, of which the latter is said to have taken advantage. By that approach there is reached for plaintiff an argument that defendant has been guilty of fraud. One answer is that there is not a suggestion that, if he made to Harvey the representation he is said to have made when he procured the assignments of this last insurance, that if he then said that plaintiff was ultimately to be the beneficiary, he did not then sincerely intend just that result. If he then assumed any obligation, it was, in view of the whole transaction, of a voluntary character and so not to be judicially enforced. Lamprey v. Lamprey, 29 Minn. 151, 155, 12 N. W. 514.

"Judicial tribunals act to enforce legal obligations, not to compel parties to carry into execution mere benevolent intentions, which they may once have entertained, but have subsequently abandoned." Eaton v. Eaton, 15 Wis. 284, 285; Roman v. Lorence, 162 Minn. 198, 202 N. W. 707; Smith v. Vosika, 163 Minn. 12, 203 N. W. 428; Maguire v. Maguire, 171 Minn. 492, 214 N. W. 666, 215 N. W. 522.

■ Another answer to plaintiff's argument assuming fraud is that her claim is of an express oral trust, void under the statute. G. S.

1923 (2 Mason, 1927) § 8081.  If in such case there could be either a resulting or constructive trust, "it would be for the exclusive benefit of the grantors."  Harney v. Harney, 170 Minn. 479, 480, 213 N. W. 38, 39.  The grantor or creator of the oral trust was not Harvey, the insured, but defendant, his father, who so plainly furnished the fund which was to be the subject matter of the trust, no one else contributing a dollar thereto.  Taking again the factual basis for plaintiff's position, there was at best a "mere refusal to perform a verbal agreement, void under the statute," which "is not fraud for which a court will declare and enforce a constructive trust."  Tatge v. Tatge, 34 Minn. 272, 276, 277, 25 N. W. 596, 598, 26 N. W. 121.  "A mere refusal to perform a verbal promise, void under the statute, is no ground for relief on the ground of fraud." There may be exceptions to that rule where there has been "some concealment or misrepresentation of facts or of the real nature of the transaction, or some oppression, intimidation, undue influence, or the like, by means of which a party has been deceived or entrapped into making the conveyance."  No such element is present here; and, assuming the utmost of confidence between Harvey Wunder and his father, there is nothing even to suggest any undue advantage taken by the latter or any deceit or entrapment perpetrated upon him.  Neither plaintiff nor her insured husband bought or paid for this insurance.  Rollins v. Mitchell, 52 Minn. 41, 53 N. W. 1020, 38 A. S. R. 519, is in a very different category and is typical of the manner in which in such cases equity stresses consideration and its source.  Mitchell had once bought and paid for the land in controversy, so the holder of the fraudulently obtained deed was adjudged a trustee of the title for his benefit.  The case is distinguished by that element of unjust enrichment which is absent here.

Order affirmed.