HOWARD IVERSON AND OTHERS v. HENRY K. FJOSLIEN AND OTHERS.
ROBERT REKEDAHL AND OTHERS, APPELLANTS.

213 N. W. 2d 627.

December 21, 1973—No. 43836.

*McCarten & Tillitt* and *Ralph S. Tillitt,* for appellants.

*I. L. Swanson,* for respondents.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Yetka, JJ., and considered en banc.

YETKA, JUSTICE.

This is an action to set aside a 99-year hunting lease made in 1947 between plaintiff Howard Iverson and defendants Henry K. Fjoslien and Sam A. Rekedahl, whose interests through various assignments have passed to the other defendants. The lease covered two adjoining parcels of land (hereafter referred to as Lots 1 and 9), located on Lake Cormorant in Grant County. In January 1945 defendants Fjoslien and Rekedahl had acquired a similar lease from Iverson's parents, who had a life estate in Lot 9, with Iverson and four brothers and sisters the remaindermen, but had no interest in Lot 1.

The matter was tried to the district court without a jury. The trial court found defendants' leases effective to convey an estate for hunting purposes in all of Lot 9 terminable, except as to an undivided one-fifth interest therein, upon the death of Annie Iverson, the surviving life tenant. The court found that the lease from Howard Iverson gave defendants an undivided one-fifth interest in Lot 1 for hunting purposes for the term of the lease. Defendants appeal from the judgment. We affirm.

The land in controversy forms a point on Lake Cormorant. The point is apparently an excellent duck pass and defendants Fjoslien and Rekedahl and their successors in interest have hunted the area since the 1930's.

Prior to December 1946, title to Lot 1 was in the United States Government. Fee title to Lot 9 was in the five plaintiffs, then minors, subject to a life estate in their parents, Tollef and Annie Iverson. For several years prior to 1946, defendants Fjoslien and Rekedahl attempted to acquire title to Lot 1 in the name of Tollef Iverson, who farmed an adjoining tract of land which included Lot 9, but Federal policy at that time gave a "preference right" to a prospective purchaser of Federal land only if he was a fee owner of contiguous property. Since Iverson's five minor children were entitled to this preferential treatment, Iverson, through the efforts of Rekedahl and Fjoslien, was appointed guardian of the children. A bid was then submitted in their names and a patent was granted in December 1946. A total of $250 was spent by Fjoslien and Rekedahl, which included the bid price and legal expenses, to obtain fee title to Lot 1 in the names of the Iverson children.

In October 1947, plaintiff Howard Iverson, the eldest son of Tollef and Annie Iverson and one of the five fee owners in common of Lots 1 and 9, having reached his majority, executed the 99-year lease involved here. Like the lease his parents had executed in 1945, it granted defendants exclusive hunting rights on both lots.

Tollef Iverson died in 1958. His wife is still living. Shortly after the death of Tollef Iverson, defendants requested that the other plaintiffs, all of whom by then had reached age 21, sign a 99-year hunting lease as Howard Iverson had done previously. They refused. Also in 1958, or 1959, Howard Iverson authorized that a road be built across the property for the sole purpose of providing defendants access to the area for hunting. From 1945 to the date of this action, August 11, 1970, defendants have exercised exclusive hunting rights on Lots 1 and 9.

Plaintiffs seek in this action to have the lease signed by Howard Iverson set aside, while the appealing defendants seek imposition of a constructive trust in the property for their benefit, or, in the alternative, a prescriptive easement permitting them to exercise exclusive hunting rights on both lots.

We have previously held that a constructive trust is an equitable remedy and that no unyielding formula is required to create such a trust. A court of equity may do so wherever unjust enrichment would otherwise result. Thompson v. Neshiem, 280 Minn. 407, 159 N. W. 2d 910 (1968).

We find no unjust enrichment here. While plaintiffs undoubtedly benefited by the efforts of the defendants to acquire Lot 1 in their names, it has not been shown that plaintiffs were unjustly enriched in the sense that the term "unjustly" could mean illegally or unlawfully. See, Sheasgreen Holding Co. v. Dworsky, 181 Minn. 79, 231 N. W. 395 (1930). Moreover, there is no allegation by defendants, nor is there evidence in the record, of fraud, violation of a confidential or a fiduciary relationship, or breach of any duty or agreement by plaintiffs on which the imposition of a constructive trust for the benefit of defendants could be based.

Defendants had an opportunity for many years, while Tollef Iverson was living, to request that he petition the probate court for an order permitting him as guardian to execute a lease in behalf of his children. This defendants failed to do, and we will not remedy that oversight by holding that a constructive trust should be imposed after the guardianship has ceased to exist.

Fjoslien and Rekedahl exercised exclusive hunting rights for more than 25 years prior to commencement of this action. Their successors in interest, by right of assignment of the leases, still have hunting rights in an undivided one-fifth interest in both lots and exclusive hunting rights on Lot 9 during the lifetime of Annie Iverson.

Defendants, in the alternative, contend that they are entitled to a prescriptive easement. In Romans v. Nadler, 217 Minn. 174, 177, 14 N. W. 2d 482, 485 (1944) we set out the necessary conditions for the granting of a prescriptive easement:

"* * * We construe the word *prescription* * * * to mean *adverse possession.*

"* * * There are five essentials of adverse possession. It must

be hostile and under a claim of right, actual, open, continuous, and exclusive."

The record shows that defendants as much as admitted that their claim was not hostile or adverse when they attempted to obtain leases, similar to that executed by Howard Iverson, from the other tenants in common. A prescriptive easement cannot exist where the party claiming under that doctrine has by his own actions acknowledged the existence of a superior right in the realty. Nor can a prescriptive easement exist when entry is obtained under and authorized by a lawfully executed lease.

The defendants have failed to prove the elements necessary for the granting of either a constructive trust or a prescriptive easement.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.