# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————————

No. 09-6010

———————————

| | | |
|---|---|---|
| In re:   Rodney N. Farr, | * | |
| | * | |
| Debtor | * | |
| | * | |
| Michael S. Dietz, Trustee, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Ronald Langlie, | * | |
| | * | |
| Defendant - Appellee | * | |

———————————

Submitted: May 13, 2009
Filed: June 8, 2009

———————————

Before SCHERMER, FEDERMAN, and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Plaintiff Michael S. Dietz, the Chapter 7 Trustee in Debtor Rodney N. Farr's bankruptcy case, appeals from the Bankruptcy Court's judgment determining that funds previously held in the Debtor's bank account were held subject to a constructive trust in favor of Defendant Ronald Langlie. Plaintiff contends that such funds were an asset of the Debtor and that the pre-bankruptcy payment of such funds to Langlie was a preferential or fraudulent transfer. For the reasons that follow, we reverse.

FACTUAL BACKGROUND

The Debtor and Langlie have been friends since childhood. For approximately twenty-five years prior to the filing of his bankruptcy case, the Debtor was in the business of general construction contracting for residential housing. Langlie was a successful business owner. In September 2005, the Debtor and Langlie entered into a written contract whereby Langlie loaned money to the Debtor for the purpose of building a spec house for their mutual profit. Pursuant to the contract, the Debtor periodically assembled proof of his out-of-pocket costs for construction of the house and submitted written requests for advances from Langlie. Langlie would review the requests and then fund the draws by placing a phone call to the president of United Prairie Bank, Patrick Segler, directing Segler to transfer funds available to Langlie into the Debtor's checking account at United Prairie Bank.

On April 10, 2006, the Debtor made the eighth of twelve draw requests under the spec house contract. This was a written draw request to Langlie in the amount of $23,195, to which the Debtor attached the customary back-up documentation of his costs. That same date, April 10, Langlie called Segler to direct him to make a deposit into the Debtor's checking account. Segler did not personally answer Langlie's phone call that day; instead, Langlie left a message on Segler's voicemail at work, directing him to make the transfer. Upon hearing the voice message, on April 10, 2006, Segler transferred $123,195, rather than $23,195, from Langlie's line of credit to the Debtor's checking account. In other words, Segler transferred $100,000 more than had been requested by the Debtor in the written draw request. The Bankruptcy Court found that the transfer of the extra $100,000 was a mistake.[1]

According to the Debtor and Langlie, neither of them reviewed their banking statements between April 10, 2006, and mid-October 2006, and so neither of them

---

[1] As discussed below, the Trustee asserts that the transfer of the additional money was not a mistake and that the Bankruptcy Court erred in so holding.

noticed the discrepancy during that six-month period. On October 6, 2006, the Debtor consulted with an attorney for the purpose of filing a Chapter 7 case. On October 16, 2006, as he was preparing for the bankruptcy filing, the Debtor finally reviewed his bank statements and discovered that the balance in his account was approximately $90,000 more than he thought it should be. He contacted the Bank to inquire about the discrepancy, and the Bank traced the excess back to the April 10 transaction. At that point, Segler and the Debtor agreed for Segler to debit the Debtor's checking account for $90,000 and credit that amount to Langlie's line of credit. At some point thereafter, Segler or the Debtor informed Langlie of the situation.

Approximately three weeks later, the Debtor filed his Chapter 7 petition. He did not disclose the $90,000 transfer to Langlie on his schedules, nor did he list Langlie as a creditor, even though he purportedly still owed Langlie for the additional $10,000 that had been transferred to the Debtor's account in April. The Debtor also failed to disclose the transaction at his § 341 meeting of creditors. After the Chapter 7 Trustee discovered the undisclosed transfer, he filed this adversary proceeding against Langlie seeking to recover the $90,000 as either a preferential or fraudulent transfer. In April 2008, the parties filed cross motions for summary judgment and the Bankruptcy Court took the motions under advisement on about April 29, 2008.

On January 6, 2009, the Bankruptcy Court orally announced its findings and conclusions on the motions for summary judgment. In sum, the Bankruptcy Court found in favor of Langlie by imposing a retroactive constructive trust on the funds transferred to Langlie by the Debtor. The Court concluded that, because the Debtor had held the money in his account in constructive trust for Langlie from April 10 through October 16, 2006, the withdrawal of the $90,000 from the Debtor's account, and the crediting of that sum to Langlie's account, was not a transfer of an interest of the Debtor in property. Since the Court held that the funds transferred to Langlie were never property of the Debtor, such transfer could not be preferential or fraudulent under §§ 547 or 548 of the Bankruptcy Code. The same day that its

3

findings were announced, the Bankruptcy Court entered an Order denying the Trustee's motion for summary judgment, and entered Judgment in favor of Langlie. The Trustee appeals.

## STANDARD OF REVIEW

We review findings of fact for clear error, and legal conclusions *de novo*. We review a court's grant of summary judgment *de novo*.[2] "We will affirm [a court's] grant of summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . ,' demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."[3]

---

[2] *In re MJK Clearing, Inc.*, 371 F.3d 397, 401 (8th Cir. 2004) (citation omitted).

[3] *Id.*; Fed. R. Civ. P. 56(c), made applicable in bankruptcy cases by Fed. R. Bankr. P. 7056.

DISCUSSION

Minnesota Standard for Constructive Trust

The Trustee's Complaint seeks to avoid the $90,000 transfer as a preferential or fraudulent transfer under § 547 and § 548, respectively, both of which contemplate as a threshold matter that the Debtor made a "transfer of an interest of the debtor in property."[4] The Bankruptcy Court did not reach any of the other elements under § 547 or § 548 because, as stated above, it determined that the $90,000 transfer had not been a "transfer of an interest of the debtor in property" since the Debtor held the $90,000 in constructive trust for Langlie. Essentially, the Bankruptcy Court determined that the Debtor simply returned to Langlie what belonged to Langlie.

The Bankruptcy Court's decision turns first on the question of whether, under Minnesota law,[5] a mistake can form the basis for imposing a constructive trust, or whether the concept requires something more than a mistake, such as wrongful conduct on the part of the person against whom the trust is sought. The Bankruptcy Court determined that a mistake is sufficient to impose a constructive trust. In so holding, the Court disagreed with the analysis in *In re Graphics Technology, Inc.*, which stated:

> Under Minnesota law, a court may impose a constructive trust only when there is clear and convincing evidence that a constructive trust is necessary to prevent unjust enrichment and whenever legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship. *In re Estate of Eriksen*, 337

---

[4] 11 U.S.C. §§ 547(b) and 548(a).

[5] As the Bankruptcy Court pointed out, state law governs the resolution of property rights within a bankruptcy proceeding and, therefore, Minnesota law governs this case. *In re MJK Clearing*, 371 F.3d at 401.

5

N.W.2d 671, 674 (Minn. 1983) (citing *Knox v. Knox*, 222 Minn. 477, 25 N.W.2d 225, 228 (1946)); *Bly v. Gensmer*, 386 N.W.2d 767, 769 (Minn. App.1986). Unjust enrichment occurs when a claim is based on the failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another. *Cady v. Bush*, 283 Minn. 105, 166 N.W.2d 358, 361-362 (1969). To show unjust enrichment, however, more is required than a mere benefit to one party – "it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App.2001) (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981)).[6]

The *Graphics Technology* panel held that, because there had been no clear and convincing evidence that the debtor in that case obtained the disputed funds "through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship," the debtor "was not unjustly enriched in the sense that it acted unlawfully or illegally."[7]

The Bankruptcy Court held that the foregoing analysis is contrary to Minnesota law because it requires some element of wrongdoing before a constructive trust will be imposed. We disagree with the Bankruptcy Court's analysis of Minnesota law.

As the Bankruptcy Court did, we start with the Minnesota Supreme Court's decision in *Henderson v. Murray*,[8] which held:

[W]here a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, or in any other

---

[6] *Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.)*, 306 B.R. 630, 636-37 (B.A.P. 8th Cir. 2004), *aff'd* 113 Fed. Appx. 734 (8th Cir. 2004).

[7] *Id.* at 637.

[8] 121 N.W. 214 (Minn. 1909).

unconscientious manner, so that he cannot justly retain the property, equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it.  Such trusts for convenience are termed *ex maleficio* or *ex delicto*, and are practically without limit.[9]

This language certainly contemplates some wrongdoing on the party in possession of the property before a constructive trust will be imposed.  However, some later Minnesota cases, relied upon by the Bankruptcy Court here, have used language which has blurred *Henderson v. Murray*'s otherwise clear message.

For example, in *Knox v. Knox*, the Minnesota Supreme Court said that "fraud, in its true sense, need not even be present," and that "it is not even necessary that a fiduciary relation should exist" for a constructive trust to be imposed.[10]  Further:

> The nature of a constructive trust can best be comprehended by keeping clearly in mind that it is not, in its true sense, a trust at all, but purely a creation of equity designed to provide a remedy for the prevention of unjust enrichment where a person holding property is under a duty to convey it to another to whom it justly belongs.  A court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment. . . .  Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.[11]

In *Thompson v. Nesheim*, the Minnesota Supreme Court held that a specific agreement to reconvey the property to the rightful owner is not necessary, reiterating that "[a]

---

[9]  *Id.* at 216 (citation omitted).  "*Ex maleficio*" is defined as "[b]y malfeasance" or "[t]ortious."  "*Ex delicto*" is defined as "[a]rising from a crime or tort."  *Black's Law Dictionary* (8th ed. 2004).  Both contemplate wrongdoing.

[10]  25 N.W.2d 225, 228 (Minn. 1946).

[11]  *Id.* (citations and internal quotation marks omitted).

court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment."[12] In *Iverson v. Fjoslien*, the Minnesota Supreme Court repeated that "a constructive trust is an equitable remedy and that no unyielding formula is required to create such a trust. A court of equity may do so wherever unjust enrichment would otherwise result."[13] And, in 1983, the Minnesota Supreme Court said in *In re Estate of Eriksen*, that "fraud need not be present in order to impose a constructive trust." Rather, "[t]he court must only be persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment."[14]

Relying on the language in these cases, the Bankruptcy Court concluded that a constructive trust may be imposed to remedy a simple mistake. However, despite the broad language in these cases, and the Minnesota Supreme Court's pronouncement that "fraud in its true sense" and "fiduciary relation"need not be present,[15] in none of those cases on which the Bankruptcy Court relied did the Supreme Court actually impose a constructive trust based on a mere mistake. Rather, in these cases, the Supreme Court only imposed constructive trusts in situations where there was indeed some wrongdoing or a breach of a fiduciary or confidential relationship, or where the disputed property was agreed by the parties to be jointly owned despite the title.

Specifically, in *Knox v. Knox*, on the advice of counsel, a husband had conveyed his interest in real estate to his wife, with the verbal understanding that the actual ownership should nevertheless remain with him. The wife thereafter refused to honor the oral agreement. Despite its pronunciation that it was "not . . . necessary

---

[12] 159 N.W.2d 910, 916 (Minn. 1968).

[13] 213 N.W.2d 627, 628-29 (Minn. 1973).

[14] 337 N.W.2d 671, 674 (Minn. 1983).

[15] *Knox v. Knox*, 25 N.W.2d at 228.

that a fiduciary relation should exist," the Minnesota Supreme Court affirmed the trial court's imposition of a constructive trust on the basis that the wife had, in fact, betrayed her confidential and fiduciary duty to him.[16] In *Thompson v. Nesheim*, the husband transferred property to his second wife in an attempt to shield it from his first wife, with the promise from the second wife that they shared the property fifty-fifty. However, when the second wife died, her will left the husband only a life estate in half of their property, with no remainder interest for his children. Again, based on the breach of the wife's agreement with her husband, the violation of their confidential relationship, and unjust enrichment, the Minnesota Supreme Court held that the imposition of a constructive trust on half of the property was appropriate.[17]

*Iverson v. Fjoslien* involved an action to set aside a lease on land. The defendants in that case wanted to acquire, from the Federal government, title to a lot for hunting purposes. Federal policy gave a preference to adjoining landowners, which they were not, so they instead paid for certain adjoining landowners who did have a preference to obtain title. Since those adjoining landowners were minors, the defendants obtained the title in the name of their father, as guardian. After being allowed by the father to hunt there for twenty-five years, and after the minors reached majority, they refused to sign a lease allowing the defendants to continue to hunt on the property, and filed suit to set aside the lease their father had entered. The defendants sought the imposition of a constructive trust. After setting out the general statement cited by the Bankruptcy Court here, the Minnesota Supreme Court affirmed the trial court's judgment denying imposition of a constructive trust, holding that there had been no unjust enrichment:

---

[16]  Indeed, in discussing the statute of limitations in that case, the Supreme Court also said that "[t]here can be no constructive trust until we have as its basis an adverse and inequitable witholding [sic] of property."  25 N.W.2d at 231.

[17]  159 N.W.2d at 918-19.

> While plaintiffs undoubtedly benefited [sic] by the efforts of the defendants to acquire Lot 1 in their names, it has not been shown that plaintiffs were unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully. Moreover, there is no allegation by defendants, nor is there evidence in the record, of fraud, violation of a confidential or a fiduciary relationship, or breach of any duty or agreement by plaintiffs on which the imposition of a constructive trust for the benefit of defendants could be based.[18]

In other words, even though the plaintiffs benefitted from acquiring property paid for by the defendants (as the Debtor here benefitted from the April 2006 transfer), since the defendants failed to show some illegal or unlawful act, or fraud, violation of confidential or fiduciary relationship, or breach of duty on the part of the plaintiffs, no constructive trust would be imposed.

In *Eriksen*, an unmarried couple bought a house together, but titled it in only the man's name because the woman had not yet obtained a divorce from her husband and because it would have caused her to lose governmental assistance benefits. When the man died, the court imposed a constructive trust on half of the house for the benefit of the woman because she had contributed equally to the acquisition and maintenance of the home, and because the parties had agreed to joint ownership. Thus, the Court held, failure to award her one-half interest in the home would result in unjust enrichment to the man's probate estate.[19]

Although *Eriksen* did not involve an allegation of fraud or misconduct, it similarly did not involve any mistake, and at least one Minnesota appellate court has declined to apply *Eriksen* in the case of a mistake. In *Lee v. Lake Area Bank*,[20] the owner of a certificate of deposit signed a handwritten statement stating that she

---

[18] 213 N.W.2d 627 (citation omitted).

[19] 337 N.W.2d at 674.

[20] 2000 WL 1376440 (Minn. App. Sept. 26, 2000) (unpublished opinion).

wanted to change the payable-on-death beneficiary designation on the CD. A bank employee mistakenly advised the owner's attorney that she could make that change by having the attorney write a letter to that effect on her behalf, which the attorney did. When the intended beneficiaries attempted to cash in the CD after the owner died, the bank refused to pay them because the change in beneficiary was invalid under Minnesota law since the attorney's letter was not the owner's writing, and the document that had been in her handwriting had not been received by the bank prior to her death. The intended beneficiaries sued the bank and the named beneficiaries, arguing, *inter alia*, that the court should impose a constructive trust on the CD due to the mistake. The court rejected that argument. After repeating the often-quoted language regarding the standard for constructive trusts from *Knox* and *Eriksen*, among other cases, the Court of Appeals held that none of the Minnesota precedent, including the seminal *Henderson v. Murray* case, stood for the proposition that "mistake" forms the basis for a constructive trust:

> Citing *Wilson v. Skogerboe*, 379 N.W.2d 696, 699 (Minn. App. 1986), the [intended beneficiaries] argue that Minnesota courts have acknowledged that unjust enrichment can occur when, by mistake, a party obtains property to which the party is not entitled. But *Skogerboe* did not involve unjust enrichment through mistake. Although the *Skogerboe* court cited *Henderson v. Murray*, 108 Minn. 76, 79, 121 N.W. 214, 216 (1909), for this proposition, *Henderson* also did not involve a mistake, and the *Henderson* court did not refer to "mistake" as a basis for finding unjust enrichment but rather "fraud or bad faith, or by taking advantage of confidential or fiduciary relations, or in any other unconscientious manner," so that the property could not justly be retained. *Henderson*, 108 Minn. at 79, 121 N.W. at 215. The [intended beneficiaries] also rely on *Rollins v. Mitchell*, 52 Minn. 41, 53 N.W. 1020 (1892). But *Rollins* involved a false representation or fraudulent promise, not mistake, and is therefore inapplicable as well. *Id.* at 49, 523 N.W. at 1021. *We conclude that the [intended beneficiaries] have failed*

11

*to show that a mistake is sufficient to support the finding of unjust enrichment necessary for the imposition of a constructive trust.*[21]

The Court of Appeals further rejected the argument that *Eriksen* helped the beneficiaries' position because that case had been premised on the notion that both parties had contributed to a home, even though it had been titled in one of their names, and it would be unjust to deprive one of the parties of her interest. In *Lee*, none of the individuals involved in the litigation contributed to the CD, and so the Court of Appeals declined to impose a constructive trust. Although, perhaps in some contrast to *Lee*, the funds here were Langlie's prior to the transfer, *Lee* still stands for the proposition that mistake does not support the imposition of a constructive trust.

Further, while we recognize that decisions from the Minnesota Court of Appeals are not binding, they do provide persuasive authority,[22] and those courts have, on more than one occasion, expressly held that a finding of unjust enrichment requires some sort of wrongful conduct under Minnesota law.[23] Even in a case relied upon by

---

[21] *Id.* at *2 (emphasis added).

[22] *Lancaster v. Am. and Foreign Ins. Co.*, 272 F.3d 1059, 1062 (8th Cir. 2001). Similarly, unpublished decisions in Minnesota, such as *Lee*, are not precedential, but are persuasive authority. *See* Minn. Stat. § 480A.08, subd. 3(c) (2006); *Donnelly Bros. Constr. Co. v. State Auto Property and Casualty Ins. Co.*, 759 N.W.2d 651, 659 (Minn. App. 2009).

[23] *See, e.g., Olson v. Bird*, 2006 WL 2601684 at *4 (Minn. App. 2006) (unpublished opinion) (stating that, to prove a claim of unjust enrichment, "[a] claimant must also show that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully, or that a party's conduct was unconscionable by reason of a bad motive," and holding that a woman who cohabitated with a farm-owner, and worked on the farm for years, was not entitled to a claim for unjust enrichment because she did not prove any of these elements, or that the parties had agreed to a co-ownership interest) (citations and internal quotation marks omitted); *Erickson Plus Ltd. v. Ventura*, 2002 WL 31867733 at *4 (Minn. App. Dec. 24, 2002) (unpublished opinion) ("[U]njust enrichment claims do not exist merely because one party benefits from another's effort or obligation. *Instead, unjust enrichment requires that a party benefit in an illegal or unlawful manner or that morally wrong behavior led to the party's enrichment at the expense of another.*") (emphasis added); *Custom Design Studio v. Chloe, Inc.*, 584 N.W.2d 430 (Minn. App. 1998) (reversing the trial court's judgment for unjust enrichment

12

the Bankruptcy Court, *Gateway Cos. v. Brevik*,[24] which held that a cause of action for unjust enrichment "can be maintained whenever one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over" and disagreeing with the defendant's argument that "illegal or unlawful conduct" was required, the Court of Appeals held that the defendant had been unjustly enriched because he knowingly used the plaintiff's computer equipment for four years in his law practice without paying for it, at the plaintiff's expense.[25] Although the plaintiff's conduct had not been "illegal or unlawful," the facts on which unjust enrichment were found certainly contemplated some "wrongful" conduct amounting to more than a mere mistake.

The conclusion that something more than mistake is required finds further support in the Minnesota Supreme Court's decision in *First National Bank of St. Paul v. Ramier*.[26] In that case, the plaintiff-bank entered into an unsecured "swing loan" agreement for $50,000 with one Ronald Rohloff for the purchase of a new home while Rohloff attempted to sell his prior home. After Rohloff died, the bank sought recovery from Rohloff's widow, arguing that she had been unjustly enriched by the retention of the loan proceeds and that the bank was entitled to a constructive trust. In rejecting that argument, the Minnesota Supreme Court, citing *Iverson v. Fjoslien*, held that "unjust enrichment claims do not lie simply because one party benefits from

---

and holding that, because the record contained no evidence of "any fraudulent or illegal acts" by the defendant, the plaintiff could not sustain an action for unjust enrichment); *American Compensation Ins. Co. v. Blue Cross Blue Shield of Minnesota*, 2001 WL 69480 at *4 (Minn. App. Jan. 30, 2001) (unpublished opinion) ("To sustain an action for unjust enrichment, a plaintiff must provide evidence of fraudulent or illegal acts by the defendants.").

[24] 2005 WL 1154278 at *3 (Minn. App. May 17, 2005) (unpublished opinion).

[25] *Id.* (quoting *Klass v. Twin Cities Fed. Sav. & Loan Ass'n.*, 190 N.W.2d 493, 494-95 (1971) (rejecting the proposition that there can be no recovery on the principle of unjust enrichment without a showing of fraud or mistake)).

[26] 311 N.W.2d 502 (Minn. 1981).

the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."[27] Noting that the bank could have protected itself by obtaining security for the loan or the wife's signature, the Supreme Court declined to impose a constructive trust.[28] It is significant that the dissent in *Ramier* said, as the Bankruptcy Court does here, that improper conduct is not a prerequisite for the imposition of a constructive trust in Minnesota.[29] While the dissent is some evidence that the issue may not be crystal clear in Minnesota, the majority did not so hold.

Based on the foregoing discussion of Minnesota law, we disagree with the Bankruptcy Court's holding that a mistake is sufficient for the imposition of a constructive trust and its conclusion that the *Graphics Technology* decision is "simply wrong." The Eighth Circuit affirmed the *Graphics Technology* decision, expressly concluding that the panel in that case "properly analyzed the issues and properly applied Minnesota law."[30] Moreover, in *In re MJK Clearing, Inc.*, the Eighth Circuit held, as did the *Graphics Technology* panel, that, under Minnesota law (namely, *Henderson v. Murray*), a party seeking to impose a constructive trust must prove that the party holding the disputed property obtained such property "by fraud, by bad faith, or by other improper means."[31] While we are of course bound by Eighth Circuit decisions, we also conclude that *MJK Clearing* and *Graphics Technology* are well-supported by Minnesota law. As a result, the Bankruptcy Court erred in holding to the contrary.

---

[27] *Id.* at 504.

[28] *Id.* As discussed more fully below, Langlie could very easily have protected himself from this problem as well.

[29] *Id.*

[30] *In re Graphics Technologies, Inc.*, 113 Fed. Appx. 734, 736 (8th Cir. 2004).

[31] 371 F.3d 397, 401 (8th Cir. 2004).

## Preferential Transfer Under 11 U.S.C. § 547(b)

Having concluded that the Bankruptcy Court erred in imposing a constructive trust based on mistake, it follows that the Debtor had legal title to the $90,000 when it was in his account and that his transfer of that money to Langlie was, therefore, a "transfer of an interest of the debtor in property." Section 547(b) permits the Trustee to avoid such a transfer if it is –

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made –

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.[32]

---

[32]  11 U.S.C. § 547(b).

In viewing Langlie's summary judgment pleadings, all of his defenses to these elements were based on the underlying premise that the $90,000 was not the Debtor's property. Specifically, he asserted that there was no "transfer" because the Debtor did not have a "legal interest" in the money, and that it was not a transfer of "an interest of the debtor in property" because, although the Debtor had legal title, he had no equitable interest in it. However, without the imposition of a constructive trust, the Debtor did have legal title to the money in his bank account. As a result, those defenses fail.

Langlie also asserted that the transfer was not "to or for the benefit of a creditor on an antecedent debt" because Langlie was not a creditor, nor was there a debt, pointing to the fact that the Debtor did not list Langlie as a creditor on his schedules.[33] The term "creditor" means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[34] The term "debt" is simply defined as a "liability on a claim,"[35] and the term "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[36] Absent the imposition of the constructive trust, at the time of the $90,000 transfer, Langlie had a claim against the Debtor for the return of the mistakenly-transferred money and was, therefore, a creditor of the Debtor. Further, the $90,000 payment was to Langlie, as a creditor, on a debt that arose before the transfer was made – *i.e.,* an antecedent debt. Similarly, Langlie's assertion that he did

---

[33] As the Bankruptcy Court pointed out, the fact that the Debtor failed to list Langlie as a creditor has no bearing on whether he was, in fact, a creditor.

[34] 11 U.S.C. § 101(10)(A).

[35] 11 U.S.C. § 101(12).

[36] 11 U.S.C. § 101(5)(A).

not receive more than he would have in a Chapter 7 liquidation, based again on the fact that he was not a creditor, must fail for the same reasons.

Finally, no one disputes that the $90,000 transfer was made within ninety days before the bankruptcy case was filed, or that the Debtor was insolvent at that time. As a result, the record supports a finding that, absent the constructive trust, the Trustee met his burden of proving each of the elements for avoidance under § 547(b). Hence, no remand is necessary for the Bankruptcy Court to make further findings.

## Other Issues Raised by the Trustee

The Trustee raised several additional arguments on appeal. For example, he asserts that the Bankruptcy Court erred in finding that the April 10, 2006 transfer was, in fact, a mistake.[37] He also contends that the Bankruptcy Court erred in imposing the constructive trust because the weighing of equities favors the Trustee, and not Langlie, particularly since Langlie failed to review his bank statements for a full six months.[38] Third, the Trustee contends that the Bankruptcy Court erred in imposing the trust

---

[37] In finding that the transfer was a mistake, the Bankruptcy Court initially observed that it was uncontroverted that the transfer was a mistake. To the contrary, that purported fact was controverted, which the Bankruptcy Court acknowledged when it considered the Trustee's motion to alter or amend the findings. Consequently, the Bankruptcy Court concluded that there was no evidence in the record to support any finding other than that the April 10 transfer had been a mistake. The Trustee asserts this was error.

[38] The imposition of a constructive trust is an extraordinary, equitable remedy. "As with other equitable remedies, the [party seeking a constructive trust] must act with diligence, but this diligence requires no more than that he shall act with reasonable promptness when he has acquired either actual or imputed knowledge of a wrongful witholding. Knowledge will be imputed to the plaintiff when, by the exercise of reasonable care, he should have known of the circumstances revealing [the] defendant's adverse and inequitable role." *Knox v. Knox*, 25 N.W.2d at 232. In essence, although the Bankruptcy Court found Langlie's testimony that he had not looked at the statements for six months to be credible, the Bankruptcy Court actually made no express finding that Langlie's lack of diligence during that six month period amounted to reasonable care.

17

retroactively and against a party who is no longer in possession of the trust *res*.[39] However, because we conclude that the Bankruptcy Court erred in imposing the constructive trust based on mistake, we need not decide those additional points here.

CONCLUSION

Because we conclude that mistake is an insufficient basis for imposition of a constructive trust under Minnesota law and Eighth Circuit precedent, the Bankruptcy Court's Judgment is reversed. The case is remanded to the Bankruptcy Court with directions to enter judgment in favor of the Plaintiff in the amount of $90,000.

---

[39] *Citing In re MJK Clearing, Inc.*, 371 F.3d at 401-02.